**United States District Court**
**District of Columbia**

| | |
|---|---|
| **Republican National Committee**<br>    310 First Street, SE<br>    Washington, DC 20003<br><br>**Reince Priebus**, as Chairman of the Republican National Committee<br>    310 First Street, SE<br>    Washington, DC 20003<br><br>**Republican Party of Louisiana**<br>    530 Lakeland Drive, Suite 215<br>    Baton Rouge, LA 70802<br><br>**Jefferson Parish Republican Parish Executive Committee**<br>    729 Champagne Drive<br>    Kenner, LA 70065<br><br>**Orleans Parish Republican Executive Committee**<br>    230 Carondelet Street<br>    New Orleans, LA 70130<br><br>**Roger Villere, Jr.**, as Chairman of the Republican Party of Louisiana<br>    530 Lakeland Drive, Suite 215<br>    Baton Rouge, LA 70802,<br><div align="right">*Plaintiffs*</div><br>*v.*<br><br>**Federal Election Commission**<br>    999 E Street, NW<br>    Washington, DC 20463,<br><div align="right">*Defendant*</div> | Civil Case No. _____<br><br>    THREE-JUDGE COURT REQUESTED |

# Verified Complaint for Declaratory and Injunctive Relief

Plaintiffs complain as follows:

**Verified Complaint**                    1

# Introduction

1. This is a First Amendment constitutional challenge to provisions of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Pub. L. 107-155, 116 Stat. 81 (Mar. 27, 2002),[1] as codified, relating to:

(a)  forming political-party-committee non-contribution accounts ("NCAs")[2] by national- and state-party committees (Count 1),

(b)  solicitation for such NCAs by national-party committee officers and agents (Count 2), and

(c)  independent federal election activity[3] of state- and local-party committees (Count 3).

2. Despite having no cognizable anti-corruption interest in restricting independent activities, the government restricts certain independent activities Plaintiffs wish to do—in challenged BCRA provisions.

3. The unifying, controlling, legal principle of the counts below is the Supreme Court's holding, as a matter of law, that "independent expenditures . . . do not give rise to corruption or the appearance of corruption." *Citizens United v. FEC*, 558 U.S. 310, 357 (2010).

4. One application of this principle is that political parties may not be prohibited from making independent expenditures. *Colorado Republican Federal Campaign Committee v. FEC*, 518 U.S. 604 (1996). "[T]he constitutionally significant fact . . . is the lack of coordination between the candidate and the source of the expenditure." *Id.* at 617 (Breyer, J., joined by O'Connor & Souter, JJ.) ("*Colorado-I*") (This plurality opinion states the holding. *Marks v. United States*, 430

---

[1] *Available at* http://www.gpo.gov/fdsys/pkg/PLAW-107publ155/pdf/PLAW-107publ155.pdf).

[2] *See* ¶¶ 5, 21-22 (explaining NCAs).

[3] *See* ¶ 51 (defining "federal election activity").

U.S. 188, 193 (1977).). "We do not see how a Constitution that grants to individuals, candidates, and ordinary political committees the right to make unlimited independent expenditures could deny the same right to political parties." *Colorado-I*, 518 U.S. at 618.

5. For example, while nonconnected political committees may establish a non-contribution account ("NCA") to receive unlimited contributions to make independent expenditures, a political-party committee may not establish such an NCA. *See* FEC, *FEC Statement on Carey v. FEC: Reporting Guidance for Political Committees that Maintain a Non-Contribution Account* (allowing only "nonconnected political committees" to form NCAs).[4] In addition, state- and local-party committees must use "federal funds" for "federal election activity," e.g., voter-registration and get-out-the-vote activities—even when they are done independently of any federal candidate. 2 U.S.C. §§ 431(20) ("federal election activity" definition), 441i(b) (prohibition). "*Federal funds* mean funds that comply with the limitations, prohibitions, and reporting requirements of the Act." 11 C.F.R. § 300.2(g). "*Non-Federal funds* mean funds that are not subject to the limitations and prohibitions of the Act." 11 C.F.R. § 300.2(k). Louisiana state-regulated funds are non-Federal funds.

6. Because Plaintiffs elect the judicial-review provision provided by BCRA § 403, *see infra* ¶ 7, "[i]t shall be the duty of the United States District Court for the District of Columbia and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of this action and appeal." BCRA § 403(a)(4) and (d)(2).

7. In relevant part, BCRA § 403, 116 Stat. at 113-14, provides as follows:

**SEC. 403. JUDICIAL REVIEW.**
    (a) SPECIAL RULES FOR ACTIONS BROUGHT ON CONSTITUTIONAL GROUNDS.—If any action is brought for declaratory or injunctive relief to challenge the

---

[4] *Available at* http://www.fec.gov/press/press2011/20111006postcarey.shtml.

constitutionality of any provision of this Act or any amendment made by this Act, the following rules shall apply:

(1) The action shall be filed in the United States District Court for the District of Columbia and shall be heard by a 3-judge court convened pursuant to section 2284 of title 28, United States Code.

(2) A copy of the complaint shall be delivered promptly to the Clerk of the House of Representatives and the Secretary of the Senate.

(3) A final decision in the action shall be reviewable only by appeal directly to the Supreme Court of the United States. Such appeal shall be taken by the filing of a notice of appeal within 10 days, and the filing of a jurisdictional statement within 30 days, of the entry of the final decision.

(4) It shall be the duty of the United States District Court for the District of Columbia and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of the action and appeal.

(b) . . . .

(c) . . . .

(d) APPLICABILITY.—

(1) INITIAL CLAIMS.— . . . .

(2) SUBSEQUENT ACTIONS.—With respect to any action initially filed after December 31, 2006, the provisions of subsection (a) shall not apply to any action described in such section unless the person filing such action elects such provisions to apply to the action.

## Jurisdiction and Venue

8. This Court has jurisdiction over this First Amendment challenge under 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

9. This Court also has jurisdiction under the judicial-review provisions of BCRA § 403, 116 Stat. at 113-14, *see supra* ¶ 7, which apply to "any action . . . brought for declaratory or injunctive relief to challenge the constitutionality of any provision of [BCRA] or any amendment made by [BCRA]," BCRA § 403(a), 116 Stat. at 113-14, because Plaintiffs "elect[] such provisions to apply to this action," BCRA § 403(d)(2), 116 Stat. at 114. BCRA § 403 provides for a three-judge court and direct appeal to the United States Supreme Court.

10. Venue is proper under 28 U.S.C. § 1391(e) and BCRA § 403, 116 Stat. at 113-14, *see supra* at ¶ 7.

**Verified Complaint**                                   4

## Parties

11. Plaintiff Republican National Committee ("RNC") "ha[s] the general management of the Republican Party, based upon the rules adopted by the Republican National Convention." *The Rules of the Republican Party* at Rule 1. RNC is a "national committee," which "by virtue of the bylaws of a political party, is responsible for the day-to-day operation of such political party at the national level, as determined by the Commission." 2 U.S.C. § 431(14). RNC is a "political committee[] established and maintained by a national political party" under 2 U.S.C. § 441a(a)(1)(B), i.e., it is a national-party committee. At the authorization of Chairman Priebus, RNC will (a) establish an NCA, (b) solicit unlimited contributions for, and direct such contributions to, the NCA, and (c) make only independent expenditures regarding federal candidates and other independent communications that refer to federal candidates from the funds contributed to the NCA. Without the relief requested herein, RNC will not do so.

12. Plaintiff Reince Priebus is the RNC Chairman and, in that capacity, he is "chief executive officer of the Republican National Committee." *The Rules of the Republican Party* at Rule No. 5(a)(1).[5] He is eligible to vote in an election for the office of the President of the United States. He intends to (a) establish an NCA in RNC, (b) authorize RNC's NCA to make only independent expenditures regarding federal candidates and other independent communications that refer to federal candidates, and (c) solicit unlimited contributions for, and direct such contributions to, RNC's NCA, if it were legal to do so. Without the relief requested herein, he will not do so.

13. Plaintiff Republican Party of Louisiana ("LAGOP") is a "State committee," i.e., "the or-

---

[5] *Available at* http://www.gop.com/wp-content/uploads/2014/03/Rules-of-the-Republican-Party.pdf.

ganization which, by virtue of the bylaws of a political party, is responsible for the day-to-day operation of such political party at the State level, as determined by the Commission." 2 U.S.C. § 431(15). LAGOP is a "political committee established and maintained by a State committee established and maintained by a State committee of a political party" under 2 U.S.C. § 441a(a)(1)(D), i.e., it is a state-party committee. At the authorization of LAGOP Chairman Roger Villere, LAGOP intends to (a) establish an NCA, (b) solicit unlimited contributions to the NCA, and (c) make only independent expenditures regarding federal candidates and other independent communications that refer to federal candidates from the funds contributed to the NCA, when lawful to do so. Without the requested relief, LAGOP will not do so. In addition, LAGOP intends to use Louisiana state-regulated funds for independent federal election activity, when lawful to do so. Without the requested relief, LAGOP will not do so.

14. Plaintiff Roger Villere, Jr. is LAGOP Chairman. He is eligible to vote in an election for the office of the President of the United States. He intends to (a) authorize LAGOP to establish an NCA, (b) solicit unlimited contributions to the NCA, and (c) make only independent expenditures regarding federal candidates and other independent communications that refer to federal candidates from the funds contributed to the NCA, when lawful to do so. Without the requested relief, he will not authorize LAGOP to do so. In addition, he intends to authorize LAGOP to use Louisiana state-regulated funds for independent federal election activity, when lawful to do so. Without the requested relief, he will not authorize LAGOP to do so.

15. Jefferson Parish Republican Parish Executive Committee ("JPGOP") is a "local committee of a political party," 2 U.S.C. § 441i(b)(1), i.e., a local committee of LAGOP. It intends to use Louisiana state-regulated funds for independent federal election activity, when lawful to do so. Without the requested relief, JPGOP will not do so.

**Verified Complaint**                                        6

16. Orleans Parish Republican Executive Committee ("OPGOP") is a "local committee of a political party," 2 U.S.C. § 441i(b)(1), i.e., a local committee of LAGOP. It intends to use Louisiana state-regulated funds for independent federal election activity, when lawful to do so. Without the requested relief, OPGOP will not do so.

17. FEC is the government agency with enforcement authority over BCRA and the Federal Election Campaign Act of 1971("FECA"), as amended, 2 U.S.C. § 431 et seq.

## Legal Context

### *IE-PACs & NCAs*

18. In *SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010) (en-banc) ("*SpeechNow*"), the D.C. Circuit held that government may not limit the amount of contributions to an independent-expenditure-only political committee ("IE-PAC") because there is no justifying interest:

> [B]ecause *Citizens United* holds that independent expenditures do not corrupt or give the appearance of corruption as a matter of law, then the government can have no anti-corruption interest in limiting contributions to independent expenditure-only organizations. No matter which standard of review governs contribution limits, the limits on contributions to SpeechNow cannot stand.

*Id.* at 696 (*citing Citizens United*, 558 U.S. 310).[6]

19. In Advisory Opinion 2010-09 (Club for Growth),[7] FEC decided that an IE-PAC may receive contributions in unlimited amounts from individuals after notifying the FEC of its intent in the following words:

> This committee intends to make independent expenditures, and consistent with the U.S. Court of Appeals for the District of Columbia Circuit decision in SpeechNow v. FEC, it therefore intends to raise funds in unlimited amounts. This committee will not use those funds to make contributions, whether direct, in-kind, or via coordinated communications, to federal candidates or committees.

---

[6] Here, "standard of review" should read "scrutiny level."

[7] *Available at* http://saos.fec.gov/aodocs/AO%202010-09.pdf.

*Id.* at Attachment A.

20. In Advisory Opinion 2010-11 (Commonsense Ten),[8] FEC decided that an IE-PAC may also receive unlimited contributions from political committees, corporations, and unions to fund independent expenditures.

21. In *Carey v. FEC*, 791 F.Supp.2d 121 (D.D.C. 2011), this Court granted a preliminary injunction for the National Defense PAC, which sought to operate as a hybrid-PAC—with one account for making contributions (subject to the base limits on contributions to PACs) and another account for making independent expenditures (to receive unlimited contributions). FEC then agreed to a stipulated order and consent judgment allowing the PAC to operate as a hybrid-PAC, with its non-contribution account able to receive unlimited contributions. *See* http://www.fec.gov/law/litigation/carey.shtml (describing litigation and consent judgment with links to case documents).

22. FEC then issued the *FEC Statement on Carey v. FEC: Reporting Guidance for Political Committees that Maintain a Non-Contribution Account* ("*NCA Guidance*"),[9] which declared the scope of its non-enforcement regarding NCAs as follows:

> The Commission will no longer enforce 2 U.S.C. §§441a(a)(1)(C) and 441a(a)(3),[10] as well as any implementing regulations, against any nonconnected political committee with regard to contributions from individuals, political committees, corporations, and labor organizations, as long as (1) the committee deposits the contributions into a separate bank account *for the purpose of financing independent expenditures, other advertisements that refer to a Federal candidate, and generic voter drives* (the "Non-Contribution Account"), (2) the Non-Contribution Account remains segregated from any accounts that receive source-restricted and amount-limited contributions for the purpose of making contributions to candidates, and (3) each account pays a percentage of administrative expenses that closely cor-

---

[8] *Available at* http://saos.fec.gov/aodocs/AO%202010-11.pdf.

[9] *Available at* http://www.fec.gov/press/press2011/20111006postcarey.shtml.

[10] Section 441a(a)(1) imposes base limits on contributions. Section 441a(a)(3) imposed aggregate limits held unconstitutional in *McCutcheon v. FEC*, 134 S.Ct. 1434 (2014).

responds to the percentage of activity for that account.

*Id.* (emphasis added).

23. In *McConnell v. FEC*, 540 U.S. 93 (2003), the Supreme Court held that political-party committees also could not be forced to choose between making independent expenditures and contributions to candidates (i.e., coordinated expenditures), *id.* at 213-19. Thus, political-party committees are also political committees that may have separate accounts for making independent expenditures and contributions to candidates.

## Other Facts

### *RNC and LAGOP NCAs*

24. RNC and LAGOP want to create their own NCAs, as other political committees may do, on the authorization of Plaintiff Priebus for RNC and Plaintiff Villere for LAGOP, subject to all applicable federal laws and regulations and pursuant to the standards of *Colorado-I*, 518 U.S. 604, regarding political-party committees' independent expenditures.

25. FEC's *NCA Guidance* recognizes the right of nonconnected political committees to form NCAs, but "nonconnected political committee" is defined to exclude party committees: "A nonconnected committee is a political committee that is not a party committee, an authorized committee of a candidate or a separate segregated fund established by a corporation of labor organization. 100.5(a) and 106.6(a)." FEC, *Federal Election Commission Campaign Guide: Nonconnected Committees* at 1 (May 2008).[11] Thus, FEC's statement of non-enforcement for NCAs does not extend to RNC's or LAGOP's intended NCA.

26. RNC and LAGOP regularly receive contributions from individuals and will continue to do so. RNC and LAGOP regularly make independent expenditures regarding federal candidates

---

[11] *Available at* http://www.fec.gov/pdf/nongui.pdf.

and other independent communications that refer to federal candidates and will continue to do so. RNC's independent-expenditure activity currently must use funds subject to RNC's base contribution limit. *See* 2 U.S.C. § 441a(a)(1)(B) (currently $32,400/year). LAGOP's independent-expenditure activity currently must use funds subject to LAGOP's base contribution limit. *See* 2 U.S.C. § 441a(a)(1)(D) (currently $10,000/year, with limit shared between state, district, and local parties within a state). RNC and LAGOP reasonably believe that some of their contributors will contribute to an RNC NCA and an LAGOP NCA, in amounts above the current contribution limits, if the judicial relief sought herein is granted.

27. Plaintiffs Priebus and RNC want to form RNC's NCA as soon as possible and begin soliciting and raising funds without contribution limits in the NCA for making independent expenditures and independent communications naming federal candidates. Priebus and RNC intend in 2014 to use RNC's NCA to conduct this independent activity in select U.S. Senate and House races. They intend in 2016 to conduct this independent activity in select U.S. Senate and House races as well to support the Republican nominee for President. They intend to do materially similar independent activity in the future.

28. Plaintiffs Villere and LAGOP want to form LAGOP's NCA as soon as possible and begin soliciting and raising funds without contribution limits in the NCA for making independent expenditures and independent communications naming federal candidates. In 2014, Villere and LAGOP intend to use LAGOP's NCA to conduct this independent activity to support the Republican opponent of U.S. Senator Mary Landrieu, who is up for election in November 2014, as well as selected Republican candidates for Congress. They intend to do materially similar independent activity in the future.

*LAGOP's, JPGOP's, and OPGOP's Funding of Independent Federal Election Activity*

29. LAGOP, JPGOP, and OPGOP want to use Louisiana state-regulated funds for independent federal election activity, upon authorization and when legal to do so. However, these plaintiffs are prohibited by 2 U.S.C. § 441i(b) from doing so and will not do so unless they receive the requested relief herein.

30. LAGOP, JPGOP, and OPGOP want to use Louisiana state-regulated funds for independent federal election activity in connection with the 2014, 2015, 2016, and 2017 elections. An example of the sort of independent federal election activity they wish to do without having to use federal funds is LAGOP's plans to make independent communications to support the Republican opponent of U.S. Senator Mary Landrieu, who is up for election in November 2014, that criticize her support for certain government policies, such as Obamacare, without expressly advocating her defeat. These independent communications would be federal election activity because each would be

> a public communication that refers to a clearly identified candidate for Federal office (regardless of whether a candidate for State or local office is also mentioned or identified) and that promotes or supports a candidate for that office, or attacks or opposes a candidate for that office (regardless of whether the communication expressly advocates a vote for or against a candidate).

2 U.S.C. § 431(20)(A)(iv). Absent the relief sought here, LAGOP would be limited to using federal funds for its planned independent communications. Contributors to LAGOP, JPGOP, and OPGOP are limited by a federal base limit of $10,000/year, which they must share, in raising federal funds. 2 U.S.C. § 441a(a)(1)(D).

31. In addition, if they receive the requested judicial relief, LAGOP, JPGOP, and OPGOP also intend to use non-federal funds to conduct other federal election activity, such as voter registration, voter identification, get-out-the-vote, and generic campaign activities that would fall

within the federal-election-activity definition, in connection with the 2014, 2015, 2016, and 2017 elections. They intend to do materially similar activity in the future.

***Future Plans and Ongoing and Irreparable Harm***

32. In the future, all Plaintiffs intend to take actions materially similar to those that they desire and intend to take here, if not limited or prohibited by the challenged laws. Given the recurring election-related context, the usual length of time for litigation such as this to be finally resolved, and the ongoing restrictions imposed by challenged laws, there is a strong likelihood that situations similar to those described here will recur without opportunity for full litigation. Thus, even if this case is not fully litigated before 2014, 2015, 2016, and 2017 elections, this case will not be moot because it will be capable of repetition yet evading review. *See, e.g.*, *FEC v. Wisconsin Right to Life*, 551 U.S. 449, 461-63 (2007) ("*WRTL-II*") (Roberts, C.J., joined by Alito, J.) (controlling opinion, *Marks*, 430 U.S. at 193).

33. Plaintiffs will face a credible threat of prosecution if they proceed with their intended activities without the requested relief.

34. If Plaintiffs do not obtain the requested relief, they will not proceed with their intended activities. In such an event, they will be deprived of their constitutional rights under the First Amendment to the United State Constitution and will suffer irreparable harm. There is no adequate remedy at law.

## Count 1
## Provisions Preventing Party-Committee NCAs

35. Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

36. Plaintiffs RNC and LAGOP are federal political-party committees that want to form

**Verified Complaint**                    12

NCAs, as other federal political committees may do.

37. As indicated in *NCA Guidance*, FEC has recognized only the right of "nonconnected political committees" to form NCAs, which excludes political-party committees.

38. Therefore, plaintiffs are prohibited from operating an NCA by the non-federal-funds prohibitions at 2 U.S.C. § 441i (titled "Soft money of political parties").

39. Plaintiffs challenge the non-federal-funds prohibitions at 2 U.S.C. § 441i(a)-(c) as unconstitutional under the First Amendment as applied to plaintiffs' intended NCAs.

40. In the alternative, the non-federal-funds prohibitions at 2 U.S.C. § 441i(a)-(c) are unconstitutional facially. *McConnell v. FEC*, 540 U.S. 93 (2003), upheld the non-federal-fund prohibitions on their face despite the fact that the *McConnell* defendants, including FEC, "ha[d] identified not a single discrete instance of *quid pro quo* corruption attributable to the donation of non-federal funds to the national party committees." *McConnell* v. FEC, 251 F.Supp.2d 176, 395 (D.D.C. 2003) (opinion of Henderson, J.). *Accord McCutcheon*, 134 S.Ct. at 1469-70 (Breyer, J., joined by Ginsburg, Sotomayor & Kagan, dissenting) (quoting and citing *McConnell*, 251 F.Supp.2d at 395) (opinion of Henderson, J.)). However the U.S. Supreme Court, in *Citizens United*, 558 U.S. at 359-60, and *McCutcheon*, 134 S.Ct. at 1450-51 (controlling opinion), requires evidence of quid-pro-quo corruption to uphold such restrictions. The non-federal-funds prohibitions are unconstitutional on their face.

41. Furthermore, plaintiffs' intended NCAs would be subject to the base limits on contributions to national-party and state-party committees. 2 U.S.C. § 441a(a)(1)(B), (D).

42. However, base contribution limits have already been held unconstitutional as applied to IE-PACs and NCAs. Since they serve no cognizable governmental interest, *see, e.g.*, *SpeechNow*, 599 F.3d at 689, the base limits on contributions to national- and state-party committees cannot

constitutionally be applied to their intended NCAs. Therefore, plaintiffs challenge the base contribution limits, 2 U.S.C. § 441a(a)(1)(B), (D), as unconstitutional under the First Amendment as applied to their intended NCAs.[12]

## Count 2
### Provision Preventing National Party Officers/Agents from Soliciting Non-Federal Funds for Party-Committee NCAs

43. Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

44. Plaintiff Priebus wants to solicit unlimited contributions for, or direct contributions to, RNC's intended NCA, but he is prohibited by the non-federal-funds ban at 2 U.S.C. § 441i(a), which mandates that RNC, its "officers or agents," and created entities "may not solicit, receive, or direct" non-federal funds. RNC wants its Chairman and other RNC officers and agents to be able to do so.

45. FEC construed the non-federal-funds ban on solicitation/direction by national-party committees, officers, and agents, 2 U.S.C. § 441i(a), to permit national-party committees' offi-

---

[12] Though other NCAs may receive corporate and union contributions, *see, e.g.*, *NCA Guidance*, plaintiffs do not presently seek that relief for their NCAs. They do not challenge the ban on corporate and union contributions, 2 U.S.C. § 441b, because this is a BCRA challenge under which the non-BCRA provision at § 441b may not be challenged. *See* BCRA § 403(a) (special proceedings for a "challenge [to] the constitutionality of any *provision* of this Act or any *amendment* made by this Act" (emphasis added)).

Rather, plaintiffs challenge only BCRA provisions/amendments (BCRA §§ 101 ("Soft Money of Political Parties"), 102 ("Increased Contribution Limits for State Committees of Political Parties"), and 307 ("Modification of Contribution Limits")) as permitted by BCRA's special "judicial review" procedures. *See McConnell*, 540 U.S. at 132 (case brought under BCRA § 403), 229 ("the Court has jurisdiction to hear a challenge to § 307").

As a result, if plaintiffs prevail in this case, their NCAs will be unable to receive corporate or union contributions. Upon completion of this case, Plaintiffs will consider whether to seek authority for their NCAs to receive all of the same contributions that other NCAs may accept in a separate and future legal action, but that is beyond the scope of this action.

cers/agents to solicit for, or direct to, an IE-PAC only contributions up to the base contribution limit applicable to multicandidate PACs (currently $5000/year), even though this base contribution limit is unconstitutional as applied to IE-PACs. *See* AO 2011-12 (Majority PAC). So if RNC may establish an NCA, Plaintiff Priebus would be allowed to solicit contributions only up to the base limit for a national-party committee (currently $32,400/year) for RNC's NCA, even though the base contribution limit is unconstitutional as applied to RNC's NCA.

46. The solicitation/direction provision at 2 U.S.C. § 441i(a) is unconstitutional under the First Amendment guarantees of free speech and association as applied to national-party officers/agents soliciting unlimited contributions for, or directing unlimited contributions to, a national-party committee's NCA.

47. In the alternative, the non-federal-funds prohibitions at 2 U.S.C. § 441i(a) are unconstitutional facially. *McConnell*, 540 U.S. 93, upheld the non-federal-fund prohibitions on their face despite the fact that the *McConnell* defendants, including FEC, "ha[d] identified not a single discrete instance of *quid pro quo* corruption attributable to the donation of non-federal funds to the national party committees." *McConnell*, 251 F.Supp.2d at 395 (opinion of Henderson, J.). *Accord McCutcheon*, 134 S.Ct. at 1469-70 (Breyer, J., joined by Ginsburg, Sotomayor & Kagan, dissenting) (quoting and citing *McConnell*, 251 F.Supp.2d at 395) (opinion of Henderson, J.)). However the U.S. Supreme Court, in *Citizens United*, 558 U.S. at 359-60, and *McCutcheon*, 134 S.Ct. at 1450-51 (controlling opinion), requires evidence of quid-pro-quo corruption to uphold such restrictions. The non-federal-funds prohibitions are unconstitutional on their face.

## Count 3
## Provisions Prohibiting Non-Federal Funds for
## Independent Federal Election Activity

48. Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

49. LAGOP, JPGOP, and OPGOP want to engage in independent federal election activity using Louisiana state-regulated funds.

50. However, the non-federal-funds prohibition at 2 U.S.C. § 441i(b) would limit them to using federal funds for their intended independent federal election activity. Section 441i(b) requires that funds "expended or disbursed" for "federal election activity" "be made from funds subject to the limitations, prohibitions, and reporting requirements of this Act." Louisiana state-regulated funds are not subject to "the limitations, prohibitions, and reporting requirements" of FECA, as amended by BCRA.

51. "Federal election activity" includes:

(i) voter registration activity during the period that begins on the date that is 120 days before the date a regularly scheduled Federal election is held and ends on the date of the election;

(ii) voter identification, get-out-the-vote activity, or generic campaign activity conducted in connection with an election in which a candidate for Federal office appears on the ballot (regardless of whether a candidate for State or local office also appears on the ballot);

(iii) a public communication that refers to a clearly identified candidate for Federal office (regardless of whether a candidate for State or local office is also mentioned or identified) and that promotes or supports a candidate for that office, or attacks or opposed a candidate for that office (regardless of whether the communication expressly advocates a vote for or against a candidate); or

(iv) services provided during any month by an employee of a State, district, or local committee of a political party who spends more that 25 percent of that individual's compensated time during that month on activities in connection with a Federal election.

**Verified Complaint**                                16

2 U.S.C. § 431(20)(A).

52. The non-federal-funds prohibition on federal election activity, 2 U.S.C. § 441i(b), there-fore, is unconstitutional under the First Amendment guarantees of free speech and association as applied to independent federal election activity.

53. Moreover, 2 U.S.C. § 441i(c) would require plaintiffs to use federal funds for fundraising for federal election activities, which is also unconstitutional under the First Amendment as ap-plied to independent federal election activity.

54. In the alternative, the non-federal-funds prohibitions at 2 U.S.C. § 441i(b)-(c) are uncon-stitutional facially. *McConnell*, 540 U.S. 93, upheld the non-federal-fund prohibitions on their face despite the fact that the *McConnell* defendants, including FEC, "ha[d] identified not a single discrete instance of *quid pro quo* corruption attributable to the donation of non-federal funds to the national party committees." *McConnell*, 251 F.Supp.2d at 395 (opinion of Henderson, J.). *Accord McCutcheon*, 134 S.Ct. at 1469-70 (Breyer, J., joined by Ginsburg, Sotomayor & Kagan, dissenting) (quoting and citing *McConnell*, 251 F.Supp.2d at 395 (opinion of Henderson, J.)). However the U.S. Supreme Court, in *Citizens United*, 558 U.S. at 359-60, and *McCutcheon*, 134 S.Ct. at 1450-51 (controlling opinion), requires evidence of quid-pro-quo corruption to uphold such restrictions. The non-federal-funds prohibitions are unconstitutional on their face.

## Prayer for Relief

Wherefore, Plaintiffs pray for the following relief:

1. Convening of a three-judge court to consider this "action . . . brought for declaratory or injunctive relief to challenge the constitutionality of any provision of [BCRA] or any amendment made by [BCRA]," BCRA § 403(a), 116 Stat. at 113-14, under BCRA § 403, Local Civil Rule 9.1, and pertinent law, as soon as practical.

**Verified Complaint**                                    17

2. "[A]dvance[ment] on the docket and . . . expedit[ion] to the greatest possible extent the disposition of this action . . . ." BCRA § 403(a)(4) and (d)(2).

3. As requested in **Count 1**, declaratory judgments that

- 2 U.S.C. § 441i(a)-(c) (non-federal-funds prohibitions) is unconstitutional under the First Amendment as applied to plaintiffs' intended NCAs;

- in the alternative, § 441i(a)-(c) is unconstitutional facially; and

- the base contribution limits, 2 U.S.C. § 441a(a)(1)(B), (D), are unconstitutional under the First Amendment as applied to plaintiffs' intended NCAs;

4. Preliminary and permanent injunctions enjoining FEC from enforcing the foregoing challenged provisions.

5. As requested in **Count 2**, a declaratory judgment that 2 U.S.C. § 441i(a) is unconstitutional as applied to national-party committee officers/agents soliciting unlimited contributions for, or directing contributions to, a national-party committee's NCA;

6. Preliminary and permanent injunctions enjoining FEC from enforcing § 441i(a) as applied to national-party committee officers/agents soliciting unlimited contributions for, or directing contributions to, a national-party committee's NCA;

7. In the alternative, a declaratory judgment that the non-federal-funds prohibitions at § 441i(a) are facially unconstitutional, along with preliminary and permanent injunctions against enforcement of said provision.

8. As requested in **Count 3**, a declaratory judgment that 2 U.S.C. § 441i(b)-(c) is unconstitutional as applied to independent federal election activity by state- and local-party committees;

9. Preliminary and permanent injunctions enjoining FEC from enforcing § 441i(b)-(c) as applied to independent federal election activity by state- and local-party committees;

**Verified Complaint**          18

10. In the alternative, a declaratory judgment that the non-federal-funds prohibitions at § 441i(b)-(c) are facially unconstitutional, along with preliminary and permanent injunctions against enforcement of these provisions.

11. Costs and attorneys fees pursuant to any applicable statute or authority.

12. Any other relief that this Court in its discretion deems just and appropriate.

Respectfully submitted,

/s/ James Bopp, Jr.
James Bopp, Jr., DC Bar #CO 0041
jboppjr@aol.com
Richard E. Coleson*
rcoleson@bopplaw.com
Randy Elf*
relf@bopplaw.com
THE BOPP LAW FIRM, PC
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/235-3685 facsimile
*Counsel for Plaintiffs*
*Pro Hac Vice Application To Be Filed

**Verified Complaint**

## Verification

I, Reince Priebus, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America. I am eligible to vote in an election for the office of the President of the United States. I am Chairman of the Republican National Committee (RNC).

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify I would competently testify as to the matters stated herein.

3. I have personal knowledge of RNC, its activities, and its intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify I would competently testify as to the matters stated herein.

4. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Complaint* concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning RNC, its activities, and its intentions. 28 U.S.C. § 1746.

Executed on ___May 20TH___, 2014.

_____
Reince Priebus

## Verification

I, Roger Villere, Jr., declare as follows:

1. I am a Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Louisiana. I am eligible to vote in an election for the office of the President of the United States. I am Chairman of the Republican Party of Louisiana ("LAGOP").

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify I would competently testify as to the matters stated herein.

3. I have personal knowledge of LAGOP, the Jefferson Parish Republican Parish Executive Committee ("JPGOP"), and the Orleans Parish Republican Executive Committee ("OPGOP"), their activities, and their intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify I would competently testify as to the matters stated herein.

4. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Complaint* concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning LAGOP, JPGOP, OPGOP, their activities, and their intentions. 28 U.S.C. § 1746.

Executed on _____May 6_____, 2014.

_____
Roger Villere, Jr.

## Certificate of Service

I hereby certify that the foregoing complaint will be served as soon as the summons is available on the following persons by certified mail, return receipt requested, and that a courtesy copy will be emailed to Kevin Deeley, FEC's Acting Associate General Counsel for Litigation, at kdeeley@fec.gov:

General Counsel
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, DC 20463
(202) 694-1650

Eric H. Holder, U.S. Attorney General
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave. NW
Washington, DC 20530.

Civil Process Clerk
UNITED STATES ATTORNEY'S OFFICE
501 Third Street, NW
Washington, DC 20530

I further certify that on the same date a copy of the complaint will be provided by the same means "to the Clerk of the House of Representatives and the Secretary of the Senate" as required under § 403(a)(2) of the Bipartisan Campaign Reform Act of 2002, 116 Stat. 114, at the following addresses:

Clerk of the House of Representatives
U.S. HOUSE OF REPRESENTATIVES
U.S. Capitol, Room H154
Washington, DC 20515-6601

Secretary of the Senate
UNITED STATES SENATE
Washington, DC 20510-6601.

/s/ James Bopp, Jr.
James Bopp, Jr., DC Bar #CO 0041

**Verified Complaint**