UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| REPUBLICAN NATIONAL COMMITTEE, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civ. No. 14-853 (CRC) |
| v. | ) ) | |
| FEDERAL ELECTION COMMISSION, | ) ) | DECLARATION |
| Defendant. | ) ) ) | |

### DECLARATION OF COUNSEL IN SUPPORT OF
### DEFENDANT FEDERAL ELECTION COMMISSION'S MOTION
### TO ALLOW TIME FOR DISCOVERY UNDER RULE 56(d)

Pursuant to 28 U.S.C. § 1746 and Federal Rule of Civil Procedure 56(d), Seth Nesin hereby declares as follows:

1. I am an attorney for the Federal Election Commission ("FEC" or "Commission") and I represent the Commission in this action.

2. I submit this Declaration in support of the Commission's Motion to Allow Time for Discovery Under Rule 56(d).

3. As required by Rule 56(d), this Declaration specifies the reasons that the Commission "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see also Convertino v. DOJ,* 684 F.3d 93, 99-100 (D.C. Cir. 2012) ("the movant must submit an affidavit which "state[s] with sufficient particularity ... why [additional] discovery [is] necessary." (quoting *Ikossi v. Dep't. of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008))).

4. On May 23, 2014, plaintiffs filed the complaint in this case. (Docket No. 1.) The Complaint challenges the constitutionality of several provisions of the Federal Election

Campaign Act ("FECA"), 2 U.S.C. §§ 431-57.  First, plaintiffs claim that the base limits on contributions to political parties at 2 U.S.C. § 441a(a)(1)(B)&(D) and the prohibitions on soft money at 2 U.S.C. § 441i(a)-(c) are unconstitutional as applied to independent-expenditure accounts they intend to create.  (Compl. ¶¶ 35-42 (Docket No 1).)  Second, plaintiffs contend that the soft money solicitation prohibitions at 2 U.S.C. § 441i(a) are unconstitutional with respect to solicitation for those intended independent-expenditure accounts.  (Compl. ¶¶ 43-47 (Docket No 1).)  Third, plaintiffs argue that the soft money prohibitions at 2 U.S.C. § 441i(b) for state and local parties engaged in Federal election activity are unconstitutional as applied to intended "independent federal election activity."  (Compl. ¶¶ 48-54 (Docket No. 1).)  Among other relief, plaintiffs seek a judgment declaring these provisions unconstitutional.  (*Id.* at 18-19.)

     5.     The Commission has not had adequate time for discovery because plaintiffs filed their motion for summary judgment just 52 days after they filed their complaint and four days after the parties conferred pursuant to Rule 26(f).  (*See* Docket No. 25.)  The parties met and conferred on July 10, 2014 by phone under Rule 26(f) to devise a discovery plan, at which time the FEC stated that it intended to take discovery.  Plaintiff's counsel indicated that he might be amenable to at least a limited period of discovery, but would check with his client.  The Commission was not permitted to begin taking discovery until that conference had taken place.  Fed. R. Civ. P. 26(d)(1).  The FEC's deadline to respond to this summary judgment motion is July 31, 2014, *see* Local Civ. R. 7(F)(1); Fed. R. Civ. P. 6(d), a date that is before its deadline to file its responsive pleading, which is August 4, 2014 (Docket No. 23).

     6.     This Court held a hearing on July 16, 2014, in which plaintiffs' previously-filed motion to expedite was considered.  Another subject of the hearing was plaintiffs' application for a three-judge court.  The outcome of that application affects whether this case is subject to the

mandatory procedures of 2 U.S.C. § 437h, a special review provision for constitutional challenges to FECA.  As the FEC indicated during its phone conference with plaintiffs, to the extent that the Court determines that this is properly a case subject to the factfinding and certification/frivolousness determinations of section 437h, the Court would lack jurisdiction to grant summary judgment to at least three of the six plaintiffs.  *Wagner v. FEC*, 717 F.3d 1007, 1011 (D.C. Cir. 2013).

7. The Commission requires discovery to present evidence that is essential to its defense against plaintiffs' lawsuit.  To allow time for such discovery, the Commission has filed (1) a motion under Rule 56(d) (Docket No. 28); (2) a memorandum of points and authorities in support of that motion (Docket No. 28-1) and in opposition to plaintiffs' motion for summary judgment (Docket No. 27); and (3) this Rule 56(d) Declaration.  Pursuant to Local Rule 7(m), counsel for the FEC conferred with counsel for plaintiffs regarding its Rule 56(d) motion, and on July 30, 2014, plaintiffs' counsel indicated that they oppose the motion.

8. Discovery from plaintiffs and third parties is necessary for the Commission to present evidence that is essential to its defense on the merits against plaintiffs' as-applied challenge.  This evidence may include written discovery, depositions, and expert testimony.  The material facts the Commission would seek regarding the merits include the following:

   a. First, the Commission requires discovery to assemble evidence confirming that the political-party contribution limits continue to deter *quid pro quo* corruption as applied to funds to be raised in unlimited amounts to finance party independent expenditures in support of federal candidates.  Because the federal contribution limits have been in place for many years, this evidence could potentially include comparative evidence from other jurisdictions or

3

testimony concerning the historical and contemporary impact of party contribution limits on such corruption.

     b. Second, the Commission requires discovery concerning the relationship between the political parties and federal officeholders and candidates, and the unique role political parties play in the organization of Congress.  The Court in *McConnell v. FEC*, 540 U.S. 93 (2003), held that national political parties create a danger of corruption or its appearance due in part to "the close relationship between federal officeholders and the national parties" and because the national parties are "inextricably intertwined with federal officeholders and candidates" *id*. at 154-55, based on a record encompassing a range of evidence of corruption.  In the current case, the FEC seeks discovery with a particular focus on the dangers of *quid pro quo* corruption and its appearance that the Supreme Court recently confirmed implicate government interests sufficient to justify contribution limits in *McCutcheon v. FEC*, 134 S. Ct. 1434 (2014).

     c. Third, the Commission requires discovery concerning how the relationships between political parties and their candidates and officeholders are perceived by voters, *i.e.*, whether the acceptance by political parties of unlimited contributions from donors would create the appearance of *quid pro quo* corruption.  Because the plaintiffs in this case are asking to engage in conduct that was not legal even prior to the time the *McConnell* record was compiled — namely, to accept unlimited contributions for the purpose of engaging in express electoral advocacy — there may be additional information available about whether engaging in such conduct would create an appearance of *quid pro quo* corruption to the public beyond the wealth of evidence from the *McConnell* record.

     d. Fourth, the Commission requires discovery concerning whether plaintiffs contend they lack the resources for effective advocacy under the existing contribution limits.

"[C]ontribution limits impose serious burdens on free speech only if they are so low as to 'preven[t] candidates and political committees from amassing the resources necessary for effective advocacy.'" *McConnell,* 540 U.S. at 135 (quoting *Buckley*, 424 U.S. at 21)).  The FEC needs discovery to determine the level of funding that plaintiffs believe is necessary to engage in effective advocacy, and to test any claims that the plaintiffs' advocacy is ineffective.  Such discovery could take the form of written discovery or depositions.

    e. Fifth, the Commission requires discovery to present evidence essential to proving that any constitutional burdens imposed by the challenged FECA provisions are justified since the statutes are closely drawn to furthering an important government interest.  Plaintiffs acknowledge that their claims fail if the FEC can demonstrate that the challenged laws are closely drawn to furthering the government's important interests in either (1) preventing actual corruption; (2) preventing the appearance of corruption; or (3) preventing circumvention of FECA's contribution limits.  (Pls.' SJ Br. at 6-7 (Docket No. 25-1).)  The Commission therefore will seek discovery to obtain evidence to demonstrate that the contribution limits are not a means substantially mismatched with these objectives.  This discovery may take the form of expert testimony, depositions, or written discovery.

    f. Sixth, the Commission may take discovery in all of the categories described above as they relate to groups that are similarly situated to plaintiffs, given that plaintiffs' complaint not only requests relief for themselves, but also seeks a declaratory judgment striking down the applicable provisions of law entirely.  Therefore, discovery of other parties and their officers, candidates and contributors could potentially provide useful information to the Court in making its determinations.

    g. Lastly, discovery may be necessary for the FEC to test the jurisdictional bases for plaintiffs' claims.  As indicated earlier, to the extent that 2 U.S.C. § 437h applies to this case, this Court lacks jurisdiction to evaluate the merits of any non-frivolous claims made by the RNC and any plaintiffs who are eligible to vote in a presidential election.  *See Wagner v. FEC*, 717 F.3d 1007, 1010-17 (D.C. Cir. 2013) (*per curiam*) (holding that the special review provision at 2 U.S.C. § 437h deprives district courts of merits jurisdiction over constitutional challenges to FECA asserted by individuals eligible to vote in a presidential election).  The Commission intends to supply an adequate record for that determination by confirming that plaintiffs Reince Priebus and Roger Villere, Jr. are registered voters.

  9. The facts the Commission seeks are discoverable.  Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," which includes inadmissible information "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  As discussed above, the discovery the FEC seeks is relevant to the threshold determination of the Court's jurisdiction as well as to the Commission's defense of the constitutionality of FECA.

  10. To obtain factual information that is essential to its defense of FECA, the Commission would serve discovery requests, which may include requests for admission, interrogatories, and document requests.  The Commission may also serve deposition notices.  These discovery requests would be served upon plaintiffs and possibly upon non-parties such as groups similarly situated to plaintiffs. The Commission may also seek testimony from expert witnesses regarding the nature and effects of the conduct of political parties generally, including the risks of corruption, the appearance of corruption, and the circumvention of the law that would result if plaintiffs were able to obtain the relief they seek in this case.

11.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

/s/ Seth Nesin

Seth Nesin
Federal Election Commission
999 E Street NW
Washington, DC 20463
(202) 694-1650

Executed on July 31, 2014