**United States District Court**
**District of Columbia**

| | |
|---|---|
| **Republican National Committee** et al., *Plaintiffs* *v.* **Federal Election Commission**, *Defendant* | **Civil Case No. 14-cv-853 (CRC)** THREE-JUDGE COURT REQUESTED |

## Plaintiffs' Opposition to FEC's Rule 56(d) Motion

James Bopp, Jr., Bar #CO 0041
jboppjr@aol.com

Richard E. Coleson*
rcoleson@bopplaw.com

Randy Elf*
relf@bopplaw.com

THE BOPP LAW FIRM, PC
The National Building
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/235-3685 facsimile
*Counsel for Plaintiffs*

*Admitted Pro Hac Vice

# Table of Contents

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

  I.   Rule 56(d) Requires FEC to Identify Specific Material Facts It Will Dispute in Order to Obtain Discovery, and Rule 26 Limits All Discovery to "Relevant Information.". . . . 7

  II.   Relevant Cases Support Barring or Limiting Discovery Here.. . . . . . . . . . . . . . . . . . . . 10

     A.  Discovery-Rules Cases Support Barring or Limiting Discovery Here.. . . . . . . . . . . 10

     B.  Free-Political-Speech Cases Support Barring or Limiting Discovery Here.. . . . . . . 17

  III.   FEC's Rule 56(d) Motion Should Be Denied.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

     A.  The Rule 56(d) Motion Should Be Denied Generally.. . . . . . . . . . . . . . . . . . . . . . . 27

     B.  Discovery Should Be Denied as to Each of FEC's Proposed Topics.. . . . . . . . . . . . 29

        1.  Discovery Should Be Denied About Past Independent-Expenditure Activity and Possible Quid-Pro-Quo Exchanges.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        2.  Discovery Should Be Denied About Purported Quid-Pro-Quo Risks Posed by Party-Committees.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

        3.  Discovery Should Be Denied About Public Perceptions Regarding "Appearance" Where Matter-of-Law Holdings Control.. . . . . . . . . . . . . . . . . . . . 34

        4.  Discovery Should Be Denied About Whether Plaintiffs Argue a Theory About Their Resources that They Have Not Argued.. . . . . . . . . . . . . . . . . . . . 36

        5.  Discovery Should Be Denied About How the NCAs Will Be Operated.. . . . . . . 36

        6.  Discovery Should Be Denied About All Topics for Similarly Situated Groups.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

        7.  Discovery Should Be Denied About Whether Individual Plaintiffs Are Registered Voters.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

  IV.   Any Permitted Discovery Should Be Narrow and Expedited.. . . . . . . . . . . . . . . . . . . 43

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

# Argument

## Introduction[1]

On May 23, 2014, plaintiffs filed their Verified Complaint (Doc. 1), seeking to establish, inter alia, noncontribution accounts ("NCAs") in time to allow the party-committee plaintiffs to use those NCAs effectively for receiving unlimited contributions and making independent expenditures in connection with the November 2014 and 2016 elections. To facilitate that timeframe— and because § 403 of the Bipartisan Campaign Reform Act ("BCRA") requires expedition —plaintiffs moved for expedition. (Doc. 6.)[2] Still seeking expeditious approval of their NCAs, plaintiffs moved for summary judgment on July 14, 2014 (Doc. 25), noting that "[t]his case raises pure questions of law" (Doc. 25-1 at 1). After waiting until July 31, FEC now files a Motion to Allow Time for Discovery Under Rule 56(d) (Doc. 28) with memorandum (Doc. 28-1), along with its summary-judgment opposition (Doc. 27), all asking this Court to deny the summary-judgment motion and allow a non-expedited schedule for discovery and summary-judgment briefing.

---

[1] In the Joint Scheduling Report at 3, plaintiffs said they would file this response on August 4, 2014. With apologies to the court and defendant, plaintiffs note that they did not meet that schedule due in part to the unforseen illness of attorney Coleson (the primary drafter of this response) after FEC filed its Rule 56(d) motion and to the nature of FEC's assertions that required more extended discussion than anticipated. Nonetheless, this opposition is filed expeditiously and plaintiffs remain committed to expediting this case and reaffirm its need for expedition.

[2] FEC relies in part on its assertion that some or all of this case is subject to 2 U.S.C. 437h, which allegedly authorizes discovery. In plaintiffs' briefing on their three-judge court motion, plaintiffs demonstrated that this case should be decided under the expedited judicial proceedings mandated by BCRA § 403. Therefore, a three-judge court should be promptly convened to decide the current summary-judgment and Rule 56(d) motions. But even § 437h does not authorize discovery to which FEC is *not entitled*, as set out herein. And § 437h does not authorize the *extensive*, *slow-motion* discovery and briefing FEC proposes. This is clear from the D.C. Circuit's order in *Buckley v. Valeo*, 519 F.2d 817 (D.C. Cir. 1975) (the opinion was dated *April 14*, 1975), wherein the appellate court instructed this Court to certify questions, augment the record, and make findings of fact "immediately, and in no event later than May 19, 1975," *id.* at 818.

Plaintiffs oppose FEC's 56(d) Motion as to both any *need* for discovery and FEC's proposal for *slow-motion* briefing (and discovery if allowed). In the Joint Scheduling Report, "[t]he parties agree[d] that this case can be resolved by cross-motions for summary judgment ...." (Doc. 26 at 4.) Therefore, they agreed that "there is *no* genuine dispute as to any material fact and [a] movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). That agreement *precludes* granting FEC's Rule 56(d) application because 56(d), coupled with 56(c),[3] is about providing evidence to prove *a genuine material-fact dispute* so that summary judgment could be denied on *that* basis. But the parties agreed there is no such dispute (and FEC said in conference that it would seek no discovery probing standing)—and FEC now points to no potential genuine material-fact dispute at which it targets its proposed discovery (as the rules require)—so FEC may not have discovery to prove a non-existent dispute. Even if discovery were permitted, which plaintiffs oppose, it would have to be narrow and expeditious, not the sweeping, slow discovery FEC proposes.

In their summary-judgment memorandum (Doc. 25-1), Plaintiffs have shown that, under a straightforward application of controlling matter-of-law holdings, (1) there is no genuine material-fact dispute and (2) plaintiffs should win as a matter of law, Fed. R. Civ. P. 56(a).

(1) There cannot *be* a genuine material-fact dispute here because the key relevant *facts* involve plaintiffs verifying their intent to engage in activities involving (a) independent expenditures, (b) independent-expenditure entities, and (c) party-committees doing independent expenditures through an independent-expenditure entity (an NCA). FEC has stated its intention not to engage in discovery probing standing, so it does not dispute plaintiffs' verified statements of in-

---

[3] Rule 56(d) "must be read in conjunction with [Rule 56(c)]." 10B Wright, Miller & Kane, *Fed. Prac. & Proc. Civ.* ("*Fed. Prac.*") § 2740 (3d ed., WL database updated Apr. 2014 ).

tent to engage in those activities—nor could FEC have any genuine reason to doubt those verifi-

cations and dispute those facts. So the real issue is whether (a) independent expenditures, (b)

independent-expenditure entities, and (c) party-committee independent-expenditures activity

poses cognizable quid-pro-quo corruption or its appearance, but that is not a *factual* question

about which FEC could submit evidence because it is settled, as a *matter of law*, that those activi-

ties pose *no* cognizable corruption or its appearance. Consequently, a party-committee doing in-

dependent expenditures through an independent-expenditure entity (an NCA) poses no cogniza-

ble threat of quid-pro-quo corruption or its appearance, as a matter of law, and there can be no

factual dispute over those legal facts.

(2) Under the same controlling holdings, plaintiffs should win as a matter of law because the

only cognizable governmental interest that might support barring party-committees from having

NCAs (or doing the other similar activities plaintiffs verify their desire to do) is quid-pro-quo

corruption or its appearance. But as a matter of law, the government lacks any such interest re-

garding independent expenditures, independent-expenditure entities, or party-committee inde-

pendent expenditures (or other independent communications or activities). So the government

has no cognizable interest in categorically banning a party-committee from setting up an NCA

(or doing the other independent activities plaintiffs seek to do).

## I. Rule 56(d) Requires FEC to Identify Specific Material Facts It Will Dispute in Order to Obtain Discovery, and Rule 26 Limits All Discovery to "Relevant Information."

Three rules govern here: 56(d), 56(c), and 26(b) (as limited by *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253 (1968), *see infra* at 8-9). Each is discussed here and will be later applied to FEC's Rule 56(d) motion. Since FEC's motion is based on Rule 56(d), that is discussed first.

**Rule 56(d).** Rule 56(d) limits nonmovant discovery for factual development to "facts essential to justify [FEC's] opposition" to plaintiffs' summary-judgment motion:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by *affidavit or declaration* that, for specified reasons, it cannot present *facts essential to justify its opposition*, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain *affidavits or declarations* or to take *discovery*; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d) (emphasis added). But it is not enough to simply *recite* a need for "facts essential to justify ... opposition" to a summary-judgment motion, as discussed next. Rather, the Rule 56(d) movant must show with specificity why it cannot show a triable fact to defeat summary judgment. *See infra* at 6-7 (Rule 56(c) discussion) and Part II.A.

To make this triable-fact showing, Rule 56(d)(2) provides two distinct mechanisms for which time might be allowed: (i) affidavits or declarations and (ii) discovery. These are distinct, though FEC conflates them. *See, e.g.*, Doc. 28-1 ("This discovery may take the form of expert testimony, depositions, or written discovery."). Necessary distinctions are explained next.

"Discovery" means "[t]he pretrial devices that can be used by one party to obtain facts and information about the case from the other party ...." *Black's Law Dictionary* 419 (5th ed. 1979). Discovery involves using the authority of the court to obtain facts by such devices as interrogatories, requests for admissions, document requests, and depositions.

**Opposition to Rule 56(d) Motion**                4

Regarding third-party discovery, discovery can apply the authority of the court (by subpoe-nas) to obtain facts from unwilling third parties. But if third parties are *willing* to provide facts, they can simply do so, so "discovery" is *unnecessary* because no coercive power is required.

Affidavits/declarations require no "discovery." For example, if a company wants an affidavit from its chief executive officer, it doesn't do discovery on that CEO. The CEO just executes the affidavit. And one does no "discovery" on one's own expert witness to get a declaration (though opposing counsel might depose that expert). The expert simply prepares the declaration.

These distinctions between affidavits/declarations and discovery, and between willing and non-willing third parties, require a Rule 56(d) movant to show, *with specificity* and *based on these distinctions*, why it cannot demonstrate a triable fact.

Regarding *affidavits/declarations*, which do not require discovery by the side offering them, the Rule 56(d) movant must show with specificity why it cannot submit an affidavit to oppose summary judgment. For an expert, this requires the movant to identify the potential triable fact, why expert testimony will create a triable fact, the expert it retained to address that fact, why that expert has been unable to submit a declaration, and how much time the expert will need to sub-mit a declaration. For an affidavit from the FEC, for example, FEC would need to make a similar showing of what fact might be triable, how an affidavit would create that triable fact, who is the affiant, why the affiant was unable to provide an affidavit, and how long the affiant will need to do so. FEC's Rule 56(d) motion and declaration do none of this.

Regarding *third-party discovery*, a similarly detailed showing is required. For example, as to an *unwilling* third party, FEC would need to identify what fact might be triable, how the potential evidence would create that triable fact, who is the third party having such evidence, why the third party is unwilling to simply provide the evidence, and how long is needed to get the evidence. As

to a *willing* third party, no *discovery* (i.e., court coercion) would be required and FEC would need to explain in detail the targeted triable fact, how an identified third party would create a triable fact, why the willing third party was unable to provide the evidence already, and how long it will take to get provide it.

FEC has failed to make the necessary distinctions and to provide the required level of specificity as outlined above, which means that its Rule 56(d) motion should be denied. Of course, stepping back for a big-picture view, there may be some explanation for this, which would be that the ultimate "fact" question in this case is really a *legal* issue. For the government to justify categorically banning a party-committee from setting up an NCA, FEC must prove that doing so would create quid-pro-quo corruption or its appearance. But as plaintiffs have demonstrated, neither independent expenditures, independent-expenditure entities (including NCAs), nor party-committee independent-expenditure activity pose such corruption or its appearance *as a matter of law*. *See* Doc. 25-1. So plaintiffs believe there can be no material-fact dispute on this legal question now settled as a matter beyond factual dispute. FEC wants to try to prove that there can be a triable fact on such corruption or its appearance, but the impossibility of such an effort, given the controlling precedents, may well account for the ambiguity and conflation in its Rule 56(d) motion. So FEC broadly seeks a fishing expedition in hopes of coming up with something useful. But it must be held to the usual Rule 56(d) standards, which FEC has not met.

**Rule 56(c).** To understand Rule 56(d), one must read it "in conjunction with [Rule 56(c)]." *Fed. Prac.* § 2740. Rule 56(d)'s references to "affidavit or declaration" (the first reference) and "justify its opposition" refer to Rule 56(c)'s requirement of "affidavits and declarations," Rule 56(c)(4), to show "the ... presence of a genuine [factual] dispute," Rule 56(c)(1)(B), in order to oppose summary judgment on a factual-dispute basis. So Rule 56(d) authorizes possible discov-

ery about only genuine material-fact disputes and provides a mechanism for affidavits and decla-

rations to show such a triable-fact dispute as required by 56(c) to avoid summary judgment under

Rule 56(a). Thus, Rules 56(c) and (d) are not mechanisms for developing arguments regarding

*matters of law*, and they are especially not for attempting to *dispute settled matters of law*.

Rather, a nonmovant is required to identify a specific fact likely subject to a genuine material-

fact dispute and how proposed discovery will likely lead to that triable fact.

**Rule 26(b).** While the *limited* discovery available under Rule 56(d) differs from discovery

under Rule 26, *see infra* at 8-9 (discussing *Cities Service*), Rule 26(b) limits discovery in general

to "matter ... *relevant* to ... claim[s] or defense[s]," which "*[r]elevant* information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added).[4] "All discovery is subject to the

limitations imposed by Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(1).

Rule 26(b)(2)(C) provides (emphasis added):

(C)    ***When Required.*** On motion or on its own, the court *must limit* the frequency or extent
of discovery otherwise allowed by these rules or by local rule if it determines that:
   (i)    the discovery sought is unreasonably *cumulative or duplicative*, or can be obtained
from *some other source* that is more convenient, less burdensome, or less expensive;
   (ii)   the party seeking discovery has had ample opportunity to obtain the information by
discovery in the action; or
   (iii)  *the burden or expense of the proposed discovery outweighs its likely benefit,* consid-
ering *the needs of the case,* the amount in controversy, the parties' resources, *the
importance of the issues at stake in the action, and the importance of the discovery
in resolving the issues*.

Under this rule, this court "must limit ... discovery" where, as here, discovery is unneeded

because there are no genuine material-fact disputes and the case involves only the application of

settled matters of law, such as the fact that independent expenditures pose neither corruption nor

---

[4] *See also Fed. Prac.* § 2741 (Rule 56(d) relief may be denied "if the discovery sought ap-
pears irrelevant to the issues to be adjudicated" (citations omitted)).

its appearance, *see, e.g., Citizens United v. FEC*, 558 U.S. 310, 357 (2010).

Under this rule, discovery must be denied where it would be "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). That applies here because the massive record in *McConnell v. FEC*, 540 U.S. 93 (2003), is available to FEC, and it deals with the same sort of topics FEC now seeks to pursue. FEC needed to demonstrate what discovery it failed to do in *McConnell* that it needs to do now. Having failed that demonstration, FEC simply needs to rely on the *McConnell* record because further discovery here would be "cumulative or duplicative." And regarding facts obtainable "from some other source ...," FEC needed to explain why it needs to get facts through discovery from plaintiffs and unwilling third-parties when it could get facts from cooperative third parties (e.g., campaign-finance "reform" groups). FEC didn't explain why it would need to subpoena third parties or what facts it could not get from willing third parties. Having failed to make this showing, FEC must not be allowed its proposed discovery.

The permitted *scope* of discovery under Rules 26(b) and 56(d) is not identical because discovery under the latter is limited to trying to prove a genuine material-fact dispute. As twice stated in *Cities Service*, 391 U.S. at 265, 298, the scope of discovery under the two rules differs. The Supreme Court first said that now-Rule 56(d)[5] "provides for comparatively limited discovery for the purpose of showing facts sufficient to withstand a summary judgment motion, ... [while] Rule 26 ... provides for broad pretrial discovery." 391 U.S. at 265. The Court reiterated this distinction: "the discovery obtainable under [now-Rule 56(d)] to oppose a motion for summary judgment would normally be less extensive in scope than the general discover obtainable under

---

[5] "When Rule 56 was rewritten in 2010, the provisions in Rule 56(f) were moved to a new subdivision (d), without any substantial changes." *Fed. Prac.* § 2740. So cases and treatises discussing now-Rule 56(d) before 2010 refer to 56(f).

Rule 26." *Id.* at 298 (In footnote 23, the Court noted: "Petitioner conceded ... his discovery

should proceed under Rule 56([d]) rather than Rule 26."). So if discovery were permitted here,

which plaintiffs oppose, this Court should limit the scope of discovery to the proper function of

Rule 56(d) discovery, i.e., for FEC to prove a specific, identified, genuine material-fact dispute.

In the present context, these rules establish that (**1**) a 56(d) motion must be based on FEC's

present inability to show a specific, identified, non-speculative, genuine material-fact dispute

needed to oppose plaintiffs' summary-judgment motion; (**2**) any permitted discovery would have

to seek evidence *relevant* to plaintiffs' claims or FEC's legitimate defense, which must be based

on *cognizable* theories of corruption (or its appearance), which are by law limited to quid-pro-

quo corruption; (**3**) the "reasonably calculated" provision still must apply only to "relevant infor-

mation," which must be relevant to plaintiffs' claims or an FEC cognizable-theory defense; and

(**4**) discovery must be barred where the burden-benefit calculation shows it to be improper, as it

is in a case presenting pure issues of law.

Even if discovery were allowed, which plaintiffs oppose, this Court should limit the duration

and scope of discovery to the proper function of Rule 56(d) discovery. Thus, FEC would need to

demonstrate with specificity a potential genuine material-fact dispute and show how the pro-

posed discovery could lead to a genuine triable fact, and the discovery should be limited by this

Court to that scope and FEC should be required to do discovery promptly. Rule 56(d) provides

no authority for FEC to delay prompt resolution of this case or to allow FEC to try to find evi-

dence supporting new theories of "corruption," especially where the Supreme Court has limited

cognizable corruption to quid-pro-quo corruption and its appearance, rejecting other theories

such as gratitude, access, or leveling the playing field. *See Citizens United*, 558 U.S. at 350, 360-

61.

**Opposition to Rule 56(d) Motion**               9

## II. Relevant Cases Support Barring or Limiting Discovery Here.

Some relevant cases reinforce the foregoing analysis of the governing rules.

## A. Discovery-Rules Cases Support Barring or Limiting Discovery Here.

*Cities Service*, as already noted, said that Rule 56(d) "provides for comparatively limited discovery for the purpose of showing facts sufficient to withstand a summary judgment motion," i.e., for proving a genuine material-fact dispute. 391 U.S. at 265.

*Libertarian Party of New Mexico v. Herrera*, 506 F.3d 417 (10th Cir. 2007), establishes that Rule 56(d) is about getting facts for a genuine material-fact dispute, not creating "historical evidence." The court reviewed (for abuse of discretion) a district court's denial of a Rule 56(d) motion. *Id.*. The Party argued a need for discovery to create "historical evidence" of burdens, *id.*:

> The Libertarian Party argues that under Supreme Court precedent to resolve the merits of its ballot-access claim, a district court must engage in a fact specific inquiry and examine the burdens placed on candidates and parties. See *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). Appellants submit that historical evidence showing the burdens faced by other similarly situated minor party candidates would prove a severe burden which is not outweighed by any state interest.

But the district court had held, as the Tenth Circuit put it, that "finding historical evidence was not necessary to assess the character and magnitude of the burdens created by New Mexico's ballot access scheme." *Id.* The appellate court noted that the district court and appellee argued that "historical evidence [wa]s not necessary because the New Mexico ballot-access scheme is unconstitutional as a matter of law." *Id.* However, the Tenth Circuit held that it need not reach the matter-of-law issue because appellant failed Rule 56(d)'s requirements: "The district court did not abuse its discretion when it denied the Libertarian Party's Rule 56([d]) motion because the motion *failed to identify any specific facts which would create a genuine issue of material fact*."

*Id.* (emphasis added). "A party may not invoke Rule 56([d]) by simply stating that discovery is incomplete," the court continued, "but must "state with specificity how the additional material will rebut the summary judgment motion."" *Id.* at 1308-09 (citation omitted).The proffered affidavit failed Rule 56(d)'s requirements, *id.* at 1309:

> The Libertarian Party's Rule 56([d]) affidavit fails to meet the specificity required by this court. The affidavit does not identify any specific facts the Libertarian Party sought to uncover or how it will rebut the Secretary of State's motion for summary judgment. The affidavit merely recites the legal standards put forth in *Anderson* and the need for general evidence to support its claim. For example, an affidavit which asserts, as the affidavit does in this case, that the plaintiff will "present evidence which will probably establish the fact that ... the magnitude of the burdens is severe ..." neither informs the district court of "probable facts not available" nor shows how this evidence will rebut the Secretary of State's motion for summary judgment. Based on the affidavit's lack of specificity, the district court did not abuse its discretion in denying the request for discovery.

In the present case, FEC similarly fails to identify with specificity any particular genuine material-fact dispute at which its discovery is targeted, instead proposing broad (even third-party) discovery in hopes of finding some historical evidence of party-committee corruption. *See* Doc. 28-1 at 9-10. But the *Colorado-I* plurality declared that "rather than indicating a special fear of the corruptive influence of political parties, the legislative history demonstrates Congress' general desire to enhance what was seen as an important and legitimate role for political parties in American elections." *Colorado Republican Federal Campaign Committee v. FEC*, 518 U.S. 604, 618 (1996) ("*Colorado-I*") (plurality). ""[A] vigorous party system is vital to American politics" and ""[p]ooling resources from many small contributors is a legitimate function and an integral part of party politics."" *Id.* (citations omitted).[6] "[T]he basic nature of the party system ... [allows] party members [to] join together to further common political beliefs, and citizens can choose to support a party because they

---

[6] "We are not aware of any special dangers of corruption associated with political parties ...." *Id.* at 616 (plurality). "What could it mean for a party to 'corrupt' its candidate or to exercise 'coercive' influence over him?" *Id.* at 646 (Thomas, J., joined by Rehnquist, C.J., and Scalia, J.).

share ... beliefs." *McCutcheon v. FEC*, 134 S. Ct. 1434, 1461 (2014). Therefore, the Supreme Court

adds, "[t]o recast such shared interest ... as an opportunity for ... corruption would dramatically

expand government regulation of the political process." *Id.* (citations omitted).[7]

*Tatum v. City and County of San Francisco*, 441 F.3d (9th Cir. 2006), also establishes that

Rule 56(d) is about establishing "a genuine issue of material fact." *Id.* at 1100. The court first

established that Rule 56(d) requires showing a genuine material-fact dispute:

> A party requesting a continuance pursuant to Rule 56([d]) must identify by affidavit the *specific facts* that further discovery would reveal, and explain *why those facts would preclude summary judgment*. *See* Fed. R. Civ. P. 56([d]); *California v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998); *see also* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2740 (3d ed.1998) ("when the movant has met the initial burden required for the granting of a summary judgment, the opposing party either *must establish a genuine issue for trial under Rule 56([c]) or explain why he cannot yet do so under Rule 56([d])*").

*Id.* (emphasis added). Then the court held that Tatum's affidavit failed to show that delay would

create a genuine material-fact dispute, *id.* at 1100-01 (emphasis added):

> Tatum's request for a continuance did not identify the *specific facts* that further discovery would have revealed or explain *why those facts would have precluded summary judgment*.... [H]er counsel stated that he had not yet received transcripts of several witness' depositions .... The declaration d[id] not, however, refer to any *specific fact* in these depositions or explain why the information contained in them was "essential to justify [Tatum's] opposition." Fed. R. Civ. P. 56([d]). The declaration does not indicate that deferring the resolution of the defendants' motion for summary judgment until the depositions had been transcribed and filed would have allowed Tatum to produce evidence creating a *genuine issue of material fact* .... The declaration does not explain how a continuance would have allowed Tatum to produce evidence creating a *factual issue* .... Absent a showing by Tatum that additional discovery would have revealed *specific facts precluding summary judgment*, the district court did not abuse its discretion by denying ... continuance under Rule 56([d]).

---

[7] In *Rufer v. FEC*, No. 14-837 (CRC), FEC opposes a preliminary injunction, in part, based on a purported history of political "[p]arties [p]laying a [k]ey [r]ole in *[q]uid [p]ro [q]uo* [c]orruption and [i]ts [a]ppearance." Doc. 13 at 14. The *Rufer* plaintiffs ably explain that "FEC [m]isstates the Framers [v]iew [t]oward [p]olitical [p]arties, Doc. 14 at 14, including FEC's conflation of "factions" ("parties of interest") with political parties ("parties of principle"), *id.* at 15. Anyway, FEC's curious effort to find "corruption" based on something other than modern political parties is an implicit concession that FEC can't prove the necessary quid-pro-quo-corruption risk under current Supreme Court holdings recognizing the value of parties as recited above.

Here, as recognized in *Tatum*, the Rule 56(d) movant must identify specific facts that would create a genuine material-fact dispute and show why discovery would allow it to establish that fact dispute and thereby defeat summary judgment.

*Keebler Company v. Murray Bakery Products*, 866 F.2d 1386 (Fed. Cir. 1989), held that "Rule 56([c]) requires an affiant to set forth admissible facts establishing a genuine issue of material fact requiring trial. Rule 56([d]) requires an affiant to *state reasons* why he cannot present by affidavit facts essential to justify his opposition to the motion for summary judgment" based on "a genuine issue of material fact." *Id.* at 1389 (emphasis in original). But Keebler simply argued, as the Court put it, that "'we have no factual basis for opposing summary judgment, but, if you stay proceedings, we *might* find *something*.'" *Id.* (emphasis in original). The court said general allegations regarding facts would not justify a fishing expedition: "If all one had to do to obtain a grant of a Rule 56([d]) motion were to allege possession by movant of 'certain information' and 'other evidence', every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files." *Id.* And the Federal Circuit held that in the benefit-burden balancing—which includes *party expense* and *judicial resources*—no continuance would be permitted given such a failure to allege a possible genuine material-fact issue:

> Summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence [through discovery] that might tend to support a complaint. [Citations omitted]. Further litigation in this case not only would put the parties to unnecessary expense but also, equally important, would be wasteful of judicial resources.

*Id.* (quoting *Sweats Fashion v. Pannill Knitting Co.*, 833 F2d 1560,1566-67 (Fed. Cir. 1987).[8]

---

[8] *Keebler* cited supporting cases, describing their holdings as follows, *id.* at 1389 n.5:

*See also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985) (must show what facts are sought and how they are reasonably expected to create a genuine issue of material fact); *SEC v. Spense & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir.1980) ("must conclusively justify entitlement to shelter of Rule 56([d]) by presenting specific facts explaining inability to make substantive response required by Rule 56([d])"; "non movant

Here, as in *Keebler*, FEC argues essentially that "we have no factual basis for opposing summary judgment, but, if you stay proceedings, we *might* find *something*" and seeks to "go[] fishing in movant's files," which effort must be rejected, inter alia, as an "unnecessary expense" and "wasteful of judicial resources."

In *Strang v. United States Arms Control and Disarmament Agency*, 864 F.2d 859 (D.C. Cir. 1989), then circuit-judge Ruth Bader Ginsburg, in an opinion for the D.C. Circuit, sustained the district court's grant of summary judgment to ACDA without giving Strang (who was seeking documents under the Freedom of Information Act) an opportunity for discovery. *Id.* at 860-61. *Strang* held that Rule 56(d) requires "the party opposing the [summary-judgment] motion [to] adequately explain[] why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Id.* at 861 (citing *Londrigan v. FBI*, 670 F.2d 1164, 1175 (D.C. Cir.1981); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2740, at 530-31 (1983)).

> [Strang] did state generally that discovery "would be *invaluable* in this case" and would give her "an *opportunity to test and elaborate the affidavit testimony* already entered." ... But she never stated concretely why she could not, absent discovery, present by affidavit facts essential to justify her opposition to ACDA's summary judgment motion. Without some reason to question the veracity of affiants ..., Strang's desire to "test and elaborate" affiants' testimony falls short; her plea is too vague to require the district court to defer or deny dispositive action. In sum, Strang offered no specific reasons demonstrating the necessity and utility of discovery to enable her to fend off summary judgment; the district court, therefore, acted within the bounds of its discretion in not granting a continuance for Strang to conduct discovery.

*Id.* (emphasis added). Here, as in *Strang*, FEC must not be allowed to evade Rule 56(d)'s require-ments of establishing a genuine material-fact dispute by instead alleging that discovery would be "invaluable" (or some synonym) or by questioning the veracity of affiants without reason or by

---

may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts"); 6–Pt. 2 J. Moore & J. Wicker, Moore's Federal Practice ¶ 56.24 (1988).

merely asserting a desire to "test and elaborate the affidavit testimony."[9]

In *Harrison v. Office of the Architect of the Capitol*, this Court denied a Rule 56(d) motion because the movant failed to meet her burden on five different grounds. 281 F.R.D. 49, 51-52 (D.D.C. 2012) (collecting cases). The Court set out the standard thus:

> [A] party seeking relief under Rule 56(d) must identify the additional discovery she would seek to oppose a motion for summary judgment "concretely" and with "sufficient particularity." *See Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir.1989); *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir.2006).

*Id.* at 51. But Harrison failed, inter alia, the requirement that a Rule 56(d) movant "not rely on speculation that discovery will produce material evidence" and "identify the specific facts that further discover would reveal or explain why those facts would preclude summary judgment," *id.* at 52, i.e., by creating a genuine material-fact dispute. Here, as in *Harrison*, FEC may not be permitted its "speculation that discovery will produce material evidence" and must be held to Rule 56(d)'s requirement that it "'concretely' and with 'sufficient particularity'" identify the specific genuine material-fact dispute it targets and how discovery will directly lead to establishing that factual dispute in order to defeat summary judgment on a factual-dispute basis.

The foregoing cases establish that a Rule 56(d) motion must be about getting facts to raise a *genuine material-fact dispute*. That focus remains even when *Convertino v. United States Department of Justice* says that "summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" 684 F.3d 93, 99 (DC. Cir. 2012) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1968)).

---

[9] As discussed below, *infra* at Part III.B.7), FEC actually questions the veracity of Plaintiffs Priebus and Villere as to whether they are eligible to vote for President and wants to do discovery on that issue as well as to "test the jurisdictional bases for Plaintiffs' claims," Doc. 28-1 at 10, though the standing facts are simple and verified and FEC has said it would not seek discovery probing standing.

*Convertino* involved a complex fact pattern where then-Assistant U.S. Attorney Convertino prosecuted what he believed to be a post-September 11, 2001, terrorist sleeper cell. *Id.* at 95-96. Though Convertino obtained a conviction, that was overturned based on withholding of documents from defendants. *Id.* at 96. When Convertino was referred for a professional-misconduct investigation, that referral was published by a reporter in the *Detroit Free Press*. *Id. Convertino* addressed Convertino's suit "alleging that an unidentified DOJ employee willfully or intentionally disclosed 'confidential Privacy Act-protected information' to the reporter." *Id.* The opinion recounts Convertino's prolonged, but yet-unsuccessful, efforts to identify the reporter's source (the reporter invoked the Fifth Amendment and the district court had refused to compel discovery of the newspaper because it would be duplicative). *Id.* 97-98. After extended and disputed discovery, the district court set a summary-judgment deadline, and refused to extend discovery, noting Convertino's years-long inability to locate the source and his ability to seek reconsideration if he succeeded. *Id.* at 98-99. In *that* context, *Convertino* made its "full opportunity to conduct discovery" comment and reversed the Rule 56(d) denial, noting that "[i]t is undisputed that Convertino currently lacks the evidence necessary to survive summary judgment on his Privacy Act claim," *id.* at 99, but that there were yet possibilities for him to find the source, *id.* at 99-01.

In its first of three criteria, *Convertino* reiterated the applicable law in this situation, i.e., that Rule 56(d) discovery must be about establishing a "triable issue": A movant's affidavit "must outline the particular facts he intends to discover and describe why those facts are necessary to the litigation. *Byrd v. U.S. Envt'l Prot. Agency* 174 F.3d , 248 (D.C. Cir. 1999) ('Byrd [must] show what facts he intended to discover that would create a triable issue....')." The genuine material-fact dispute, i.e., the "triable issue," in that case was, of course, whether someone at

DOJ unlawfully leaked information to the reporter.[10] *Convertino* is not like the present situation—which involves the straightforward application of well-settled, matter-of-law holdings to a simple fact pattern (and where FEC acknowledges there is no genuine material-fact dispute, *see supra* at 2)—but *Convertino* reaffirms that FEC's Rule 56(d) motion here must be about proving that there is a "triable issue" in order to defeat summary judgment.[11]

## B. Free-Political-Speech Cases Support Barring or Limiting Discovery Here.

Free-political-speech cases, such as the present case, require special care by the courts to avoid unwarranted burdens on First Amendment free-speech and free-association liberties. In *FEC v. Wisconsin Right to Life*, 551 U.S. 449 (2007) (controlling opinion by Roberts, C.J., joined by Alito, J., which states the holding, *Marks v. United States*, 430 U.S. 188, 193 (1977)) ("*WRTL-II*"), WRTL wanted to run ads against filibusters of judicial candidates, but was barred by BCRA's ban on corporate electioneering communications. (The ban was struck down facially later in *Citizens United*, 558 U.S. 310.) FEC was allowed "extensive discovery" on the *legally-*

---

[10] *Convertino* cited *Liberty Lobby*, 477 U.S. at 257, for the "full opportunity to conduct discovery" quote. 684 F.3d at 99. *Liberty Lobby* was not addressing a Rule 56(d) motion, but rather what standards apply to determine *if* a "genuine" material-fact dispute is present. *See* 477 U.S. at 248-57. And in the context of that quote the case established once more, citing *Cities Service*, 391 U.S. at 290, that Rule 56(d) is about finding facts to establish a genuine material-fact dispute: "[T]he plaintiff must present evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." 477 U.S. at 257. Nowhere does *Liberty Lobby* say that discovery under 56(d) should be about anything other than creating a genuine material-fact dispute, and it cites *Cities Service*, which clearly requires that Rule 56(d) motions be so focused. *See supra* at 8-9.

[11] The same is true of *Bourbeau v. Jonathan Woodner Co.*, 600 F. Supp. 2d 1(D.D.C. 2009), which suggests that "pre-discovery summary judgment motions are usually premature and hence disfavored," *id.* at 3, but cites *Carpenter v. Federal Nat'l Mortgage Assoc.*, 174 F.3d 231, 237 (D.D.C. 1999), for the proposition that a "party seeking Rule 56([d]) discovery must offer a 'reasonable' basis for believing that discovery would reveal *triable issues of fact*." 600 F. Supp. 2d at 4 (emphasis added). So "*usually* premature" doesn't mean *always* premature, and the Rule 56(d) movant must specify triable issues of fact (which FEC doesn't do here).

*erroneous* theory that the "intent" behind the issue-ads mattered in the constitutional analysis,[12]

and the Supreme Court noted the resultant "severe burden," 551 U.S. at 468 n.5 (emphasis

added):

> Consider what happened in these cases. The District Court permitted extensive discovery on the
> assumption that WRTL's intent was relevant. As a result, the defendants deposed WRTL's
> executive director, its legislative director, its political action committee director, its lead commu-
> nications consultant, and one of its fundraisers. WRTL also had to turn over many documents
> related to its operations, plans, and finances. *Such litigation constitutes a severe burden on
> political speech.*

As a result, the Supreme Court provided express instructions regarding discovery, which should

also control similar free-political-speech cases, such as the present one: "[T]he proper standard

for an as-applied challenge .... must entail minimal if any discovery, to allow parties to resolve

disputes quickly without chilling speech through the threat of burdensome litigation. See *Vir-

ginia v. Hicks*, 539 U.S. 113, 119 (2003)." 551 U.S. at 469. Here as in *WRTL-II*, any discovery

proposed by FEC on a non-"relevant" constitutional analysis must be rejected, e.g., FEC must not

be allowed to pursue discovery on rejected theories of "corruption" (such as the notion that party-

committees are corrupting or that their independent-expenditure activity is corrupting) and must

not be allowed to escape the controlling effect of matter-of-law holdings to the effect that

- independent expenditures pose neither corruption nor its appearance, *Citizens United*, 558

  U.S. at 357;

- entities (such as NCAs) that make only independent expenditures pose no risk of corruption

  or its appearance and so must be permitted to receive unlimited contributions,

  *SpeechNow.org v. FEC*, 599 F.3d 686, 696 (D.C. Cir. 2010) ("*SpeechNow*") (en banc); *see*

---

[12] As *WRTL-II* noted, "this Court in *Buckley*[ *v. Valeo*, 424 U.S. 1 (1976)] had already re-
jected an intent-and-effect test for distinguishing between discussions of issues and candidates.
See 424 U.S., at 43-44." 551 U.S. at 467. So FEC should not even have been arguing such a
flawed theory, let alone conducting severely burdensome discovery based on it.

*also EMILY's List v. FEC*, 581 F.3d 1, 12 (D.C. Cir. 2009) (recognizing right to have sepa-

rate accounts for independent expenditures and for contributions);

- party-committees pose no risk of corruption or its appearance when they engage in

  independent-expenditure activity, *see Colorado-I*, 518 U.S. 604; *see also McConnell*, 540

  U.S. at 213-19 (striking provision requiring party-committees to choose between coordinated

  and independent expenditures, despite *McConnell*'s view that candidates and parties were

  "inextricably intertwined," *id.* at 155, meaning that party-committee independent-expenditure

  activity is clearly non-corrupting); and

- where entities may do independent expenditures *separately*, they must be allowed to pool

  their resources for effective advocacy by doing them together, as FEC has conceded. *See*

  FEC, Advisory Opinion ("AO") 2010-11 (Commonsense Ten) at 3.

Simply applying these matter-of-law holdings and FEC's advisory-opinion concession resolves

this case for plaintiffs without any need for discovery.

But what of FEC's cites to cases mentioning a "full factual record"? Doc. 28-1 at 6. Perhaps

that is appropriate in cases such as *McConnell*, 540 U.S. 93, where all parties *agreed* to expan-

sive discovery regarding facial challenges to the *brand-new* and controversial BCRA that raised

numerous, unresolved questions about such legislative innovations as "electioneering communica-

tions" and "soft money" that had not previously *existed* in the Federal Election Campaign Act

("FECA"), let alone been restricted and regulated. But such expansive discovery is *not* appropri-

ate in a matter-of-law, as-applied challenge to BCRA based on well-established legal principles

after *McConnell*. That is the lesson of *WRTL-II*, as just discussed, which criticized FEC for im-

posing a "severe burden on political speech" by its unwarranted, expansive discovery. A full fac-

tual record was *not* proper in that case, which turned on matter-of-law holdings in place since

*Buckley*, 424 U.S. 1. *WRTL-II*'s instruction on discovery (that there should be little or none) is the model for discovery in this present litigation, which simply applies matter-of-law holdings, listed above in bullet points, to a simple verified fact pattern. These matter-of-law holdings should be applied in a straightforward constitutional analysis *without* imposing a full-factual-record burden on plaintiffs and on this Court, which burden is something to *avoid* (*WRTL-II* declared it "a severe burden on political speech"), not to seek.

McCutcheon* is an example of a case decided without a full factual record—the dissent thought the case should be remanded for factual development, 134 S. Ct. at 1479-81, which the majority rejected, *id.* at 1447 n.4. If the Supreme Court believes that a full factual record is *needed* in political-speech cases, it would have remanded the case for factual development. It did not, which settles the question of whether a full factual record is needed (or even preferred) in political-speech cases. Now, it is true that FEC didn't *seek* discovery in *McCutcheon*, but that doesn't change the Supreme Court's rejection of calls for remand for factual development. Nor does the fact that FEC didn't seek discovery in *McCutcheon* help FEC here because it amounts to an FEC concession that a "full factual record" isn't really needed in a political-speech case such as this. In both *McCutcheon* and this case, the real issues are legal, not factual.

FEC asserts that plaintiffs claim, in their Verified Complaint (Doc. 1 at ¶¶ 40, 47, 54 (facial challenges)), that this case "requires evidence." (Doc. 28-1 at 1, 8-9.) This has already been refuted in the Joint Scheduling Report (Doc. 26 at 6-7), to which refutation FEC fails to respond, so the original refutation is simply repeated here. Simply reading the sentence from which FEC lifts two words shows that, in context, the words do not say what FEC asserts they say.[13] The

---

[13] Paragraph 40 of the Verified Complaint (repeated in similar paragraphs on all three counts) states (emphasis added) as follows:

In the alternative, the non-federal-funds prohibitions at 2 U.S.C. § 441i(a)-(c) are unconstitu-

paragraphs of the Verified Complaint to which FEC cites involve facial-challenge claims based on the fact that challenged provisions *were upheld* in *McConnell*, 540 U.S. 93, without proof of the quid-pro-quo corruption that is *now required* by *McCutcheon* and *Citizens United*. But the point of those facial claims is not that FEC should provide quid-pro-quo corruption evidence but that *as a matter of law* it *cannot* under the controlling precedents of *Citizens United* and *McCutcheon* that preclude the theories of corruption on which *McConnell* upheld challenged provisions. As noted in the bullet-points above, this case is based on the application of matter-of-law holdings to the present case. No evidence is needed for that constitutional-analysis exercise. Indeed no proof of quid-pro-quo corruption, or its appearance, is *possible*, as a matter of law, where independent expenditures and independent-expenditure activity are involved.

Relatedly, FEC argues that the "*appearance* of corruption is a distinct interest" on which it may conduct discovery. (Doc. 28-1 at 9, citing Doc. 28-2 at 4 (¶ 8.c).) FEC's recited topics of proposed discovery will each be addressed seriatim below, but here it is important, in laying the analytical foundation, to note the flaw in FEC's assertion that *appearance* is some free-floating interest and that FEC can do discovery on that appearance. *Citizens United* expressly held, as a matter of law, that "independent expenditures ... do not give rise to corruption *or the appearance of corruption*." 558 U.S. at 357 (emphasis added). Therefore, doing independent-expenditure

---

tional facially. *McConnell v. FEC*, 540 U.S. 93 (2003), upheld the non-federal-fund prohibitions on their face despite the fact that the *McConnell* defendants, including FEC, "ha[d] identified not a single discrete instance of *quid pro quo* corruption attributable to the donation of non-federal funds to the national party committees." *McConnell* v. FEC, 251 F. Supp. 2d 176, 395 (D.D.C. 2003) (opinion of Henderson, J.). *Accord McCutcheon*, 134 S. Ct. at 1469-70 (Breyer, J., joined by Ginsburg, Sotomayor & Kagan, dissenting) (quoting and citing *McConnell*, 251 F. Supp. 2d at 395) (opinion of Henderson, J.)). *However the U.S. Supreme Court, in* Citizens United*, 558 U.S. at 359-60, and* McCutcheon*, 134 S. Ct. at 1450-51 (controlling opinion), requires evidence of quid-pro-quo corruption to uphold such restrictions.* The non-federal-funds prohibitions are unconstitutional on their face.

activity creates *no appearance of corruption*. And "because *Citizens United* holds that independent expenditures do not corrupt or *give the appearance of corruption* as a matter of law, then the government can have *no anti-corruption interest* [including appearance] in limiting contributions to independent expenditure-only organizations." *SpeechNow*, 500 F.3d at 696 (emphasis added). Moreover, *Citizens United* held that the only cognizable corruption is *quid-pro-quo* corruption (not "corruption" defined any other way, such gratitude (including "valuing" by candidates), access, equalizing, and so on), 558 U.S. at 359-61, which is "an act akin to bribery," *McCutcheon*, 134 S. Ct. at 1466. So any *appearance* of corruption interest is limited to the *appearance of quid-pro-quo corruption*, i.e., the appearance of "'a direct exchange of an official act for money'—an act akin to bribery," *id.*, not the appearance of gratitude, access, equalizing, and so on. So there is no free-floating "appearance of corruption" interest on which FEC can do discovery. And, as a matter of law, neither independent expenditures (*Citizens United*), nor party-committee independent-expenditure activity (*Colorado-I* and *McConnell*), nor independent-expenditure-only entities such as NCAs (*SpeechNow*) give rise to either corruption of the appearance of corruption. So no discovery is permissible regarding the "appearance of corruption" that, as a matter of law, is not cognizable with regard to independent-expenditure activity.

The chilling nature of the discovery FEC proposes on First Amendment rights must be noted. If every plaintiff who dares to assert First Amendment free-speech and-association rights must endure broad, intrusive discovery at the hand of FEC's Office of General Counsel, that is a serious chill on core-political-speech rights which must not be tolerated. FEC lawyers must not be allowed to impose a burdensome discovery penalty on anyone daring to challenge provisions restricting their First Amendment rights—*especially* where, as here, the case involves only the application of recent controlling precedents to an important new situation. In the analogous area of

FEC investigations, courts have noted the need for First Amendment protection. The investigative process itself "tends to impinge upon such highly sensitive areas as freedom of speech or press, freedom of political association, and freedom of communication of ideas." *Sweezy v. New Hampshire*, 354 U.S. 234, 245 (1957). This is so, because "[t]he mere summoning of a witness and compelling him to testify, against his will, about his beliefs, expressions or associations is a measure of governmental interference." *Watkins v. United States*, 354 U.S. 178, 196-97 (1957); *see also Sweezy*, 354 U.S. at 250. Such compelled disclosures "can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley*, 424 U.S. at 64.

This is particularly true with regard to investigations or discovery done *by FEC* because "[t]he sole purpose of the FEC is to regulate activities involving political expression, the same activities that are the primary object of the first amendment's protection. The risks involved in government regulation of political expression are certainly evident here." *FEC v. Florida For Kennedy Comm.*, 681 F.2d 1281, 1284 (11th Cir. 1982).[14] Therefore, constitutional considerations require FEC to prove to the satisfaction of the courts that it has statutory investigative authority over the party it wishes to investigate (and the same heavy persuasive burden should apply to FEC in trying to compel discovery). *Id.* at 1285; *see also FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 387 (D.C. Cir. 1981) (Because "[t]he subject matter which the

---

[14] In *FEC v. Christian Coalition*, 52 F. Supp. 2d 45 (D.D.C. 1999), FEC accused Christian Coalition of coordination with six campaign-committees in three election cycles and doing illegal express advocacy and imposed a massive, burdensome, expensive, long, and intrusive investigation, with Christian Coalition ultimately being exonerated on all charges. *See* James Bopp, Jr., *Federal Election Commission Procedures* at 15-21 (Oct. 16, 2003) (Testimony of James Bopp, Jr. Before the United States Committee on House Administration) (Bopp was counsel for Christian Coalition), *available at* www.campaignlegalcenter.org/attachments/LEGISLATION/941.pdf. The investigation included 81 depositions of 48 individuals and massive paper discovery. *Id.* at 16. Burdensome document requests were imposed on third parties. *Id.* at 17. FEC lawyers probed into religious beliefs, what people prayed about, and all sorts of associations, even by family members and others having no connection to any alleged wrongdoing. *Id.* at 17-21.

FEC oversees ... relates to behavior of individuals and groups only insofar as they act, speak and associate for political purposes," the Commission's investigative authority is subject to "extra-careful scrutiny from the court."). "The danger of treading too quickly or too blithely upon cher-ished liberties is too great to demand any less of the FEC." *Id.* In *FEC v. Machinist Non-Partisan Political League*, the District of Columbia Circuit held that FECA did not apply to "draft commit-tees," based primarily on the fact that it would allow a dramatic expansion of the FEC's authority to intrude into citizens' First Amendment activities:

> [T]he subject matter of [the subpoenaed] materials represent[ed] the very heart of the organ-ism which the first amendment was intended to nurture and protect: political expression and association concerning federal elections and officeholding. The FEC first demands all avail-able materials which concern a certain political group's "internal communications," wherein its decisions "to support or oppose any individual in any way for nomination or election to the office of President in 1980" are revealed .... Then this federal agency, whose members are nominated by the President, demands all materials concerning communications among various groups whose alleged purpose was to defeat the President by encouraging a popular figure from within his party to run against him. As a final measure, the FEC demands a listing of every official, employee, staff member and volunteer of the group, along with their respective telephone numbers, without any limitation on when or to what extent those listed participated in any MNPL activities. The government thus becomes privy to knowledge concerning which of its citizens is a "volunteer" for a group trying to defeat the President at the polls ... [R]elease of such information to the government carries with it a real potential for chilling the free exercise of political speech and association guarded by the first amend-ment.

655 F.2d at 388 (footnote omitted). FEC's discovery requests, like their investigations, require the most careful scrutiny and FEC must not be allowed a fishing expedition as the price of First Amendment litigation.

Finally, some examples of FEC's misguided approach in some similar free-political-speech cases helps to put FEC's current discovery requests and arguments in a broader context.

In a post-*McConnell*, as-applied challenge to a BCRA provision (the ban on corporate elec-tioneering communications) FEC persuaded this Court that *McConnell foreclosed* an as-applied

challenge, a proposition that was quickly and *unanimously* rejected on appeal in *Wisconsin Right to Life v. FEC*, 546 U.S. 410 (2006) ("*WRTL-I*"). As noted above, *supra* at 17-18, FEC imposed in that case—based on a legally-erroneous "intent" theory—what the Supreme Court disapprovingly called a "severe burden" of discovery. *WRTL-II*, 551 U.S. at 468 n.5. That was partially responsible for WRTL's long delay in getting to do what the First Amendment guaranteed it the right to do.[15] Substantively, *WRTL-II* held the corporate-electioneering-communication ban unconstitutional as applied to electioneering communications that didn't contain an "appeal to vote." *Id.* at 469-70. As the Court would describe it in *Citizens United*: "The controlling opinion in *WRTL*[-*II*], which refrained from holding the statute invalid except as applied to the facts then before the Court, was a careful attempt to accept the essential elements of the Court's opinion in *McConnell*, while vindicating the First Amendment arguments made by the WRTL parties." 558 U.S. at 333. But instead of simply following the Court's "objective 'appeal to vote' test, ... FEC adopted a two-part, 11-factor balancing test to implement *WRTL*'s ruling," *id.* at 335. "This," the Court said, "is precisely what WRTL sought to avoid," *id.* at 336, "the FEC has created a regime that allows it to select what political speech is safe for public consumption by applying ambiguous tests," *id.* As a result, *Citizens United* facially struck down the ban on corporate and union electioneering communications and independent expenditures to avoid "prolong[ing] the substantial, nation-wide chilling effect caused by [2 U.S.C.] § 441b's prohibitions on corporate expenditures. " *Id.* at 333. In the process, it addressed the impermissible burden protracted litigation places on core-political speech, which was one reason why the Court struck the provision facially instead of allowing further as-applied challenges:

---

[15] WRTL's complaint was filed July 28, 2004, *id.* at 460, but *WRTL-II* wasn't decided until June 25, 2007, long after the problem of Senate filibusters of judicial nominees—the topic of WRTL's ads—ceased to be a hot-button issue.

[S]ubstantial time would be required to bring clarity to the application of the statutory provision on these points in order to avoid any chilling effect caused by some improper interpretation.... It is well known that the public begins to concentrate on elections only in the weeks immediately before they are held. There are short timeframes in which speech can have influence. The need or relevance of the speech will often first be apparent at this stage in the campaign. The decision to speak is made in the heat of political campaigns, when speakers react to messages conveyed by others. *A speaker's ability to engage in political speech that could have a chance of persuading voters is stifled if the speaker must first commence a protracted lawsuit. By the time the lawsuit concludes, the election will be over and the litigants in most cases will have neither the incentive nor, perhaps, the resources to carry on...* Today, Citizens United finally learns, *two years after the fact*, whether it could have spoken during the 2008 Presidential primary—*long after the opportunity to persuade primary voters has passed.*

*Id.* at 333-34. In sum, *Citizens United*, as *WRTL-II* before it, disapproved prolonged litigation in cases like this, along with FEC attempts to evade clearly controlling precedents. These BCRA § 403 cases, along with the BCRA § 403 *McCutcheon* case, lay the constitutional analysis for this case, and their disapproval of protracted litigation and burdensome discovery should control here.

Another closely related case from this Court is instructive. It began with Advisory Opinion Request 2010-20, in which National Defense PAC sought an advisory opinion approving its right to be a hybrid-PAC with a non-contribution account for making only independent expenditures. Despite the clear constitutional and precedential authority for such an NCA, FEC commissioners could not muster the required four votes to approve an advisory opinion. And FEC Office of General Counsel argued against an NCA until this Court granted a preliminary injunction to the *Carey* plaintiffs. *Carey v. FEC*, 791 F. Supp. 2d 121 (D.D.C. 2011). Subsequently, FEC entered into a stipulated order and consent judgment agreeing not to enforce the base and aggregate limits. *See Carey v. FEC*, No. 11-259 (RMC), Doc. 28.[16]  FEC then issued its *NCA-Guidance*[17] allow

---

[16] This Court subsequently awarded attorneys' fees to plaintiffs under the Equal Access to Justice Act, 28 U.S.C. 2412, because FEC's legal position in opposing a hybrid committee was not substantially justified in light of directly applicable, controlling precedent, especially *EMILY's List v. FEC*, 581 F.3d 1 (D.C. Cir. 2009). *See Carey v. FEC*, No. 11-259 (RMC), Docs. 34 (mem. op.) and 37 (order).

[17] FEC, *FEC Statement on Carey v. FEC: Reporting Guidance for Political Committees that*

**Opposition to Rule 56(d) Motion**          26

ing NCAs. In the present case, the controlling constitutional analysis and precedents are equally

clear—there is no constitutionally cognizable reason why party-committees should not be able to

have NCAs (*see* Doc. 25-1 (summary-judgment memo)—and plaintiffs should not have to en-

dure broad, burdensome, intrusive, protracted discovery and slow-motion summary-judgment

briefing to establish that right, especially where they want to have NCAs in place and functioning

in time for 2014 and 2016 elections.

### III. FEC's Rule 56(d) Motion Should Be Denied.

**A.  The Rule 56(d) Motion Should Be Denied Generally.**

Under the controlling rules and case law above, *see supra* Parts I and II, FEC's motion should

be denied generally because there cannot *be* a genuine material-fact dispute here because the key

relevant *facts* involve plaintiffs verifying their intent to engage in activities involving (a) inde-

pendent expenditures, (b) independent-expenditure entities, and (c) party-committees doing inde-

pendent expenditures and other independent communications. FEC has stated its intention not to

engage in standing discovery, so it does not dispute plaintiffs' verified statements of intent to

engage in those activities—nor could FEC have any genuine reason to doubt those verifications

and dispute those facts. So the real issue is whether (a) independent expenditures, (b)

independent-expenditure entities, and (c) party-committees doing independent expenditures and

other independent communications pose cognizable quid-pro-quo corruptions or its appearance,

but that is not a *factual* question about which FEC could submit evidence because it is settled, as

a *matter of law*, that those activities pose *no* cognizable corruption or its appearance. Conse-

quently, a party-committee doing independent expenditures through an independent-expenditure

entity (an NCA) poses no cognizable threat of quid-pro-quo corruption or its appearance, as a

---

*Maintain a Non-Contribution Account* (Oct. 5, 2011).

matter of law, and there can be no factual dispute over those *legal* facts.

Moreover, FEC's Rule 56(d) motion should be denied generally because:

- the information FEC seeks and its Rule 56(d) motion and affidavit fail the criteria of Rule 56(c) and (d), which are about establishing a *genuine material-fact dispute* and requires *specific* identification of what evidence is sought regarding such a dispute and a clear explanation of how the discovery sought relates to establishing that dispute[18];

- the information FEC seeks does not distinguish (a) between affidavits/declarations and discovery and (b) between willing and unwilling third-parties, or provide, regarding those distinctions, the details of what, how, who, why not, and how long set out above, *see supra* at 5-6; and FEC does not show why the facts it seeks are not cumulative, duplicative, and better available from willing third parties, as set out above, *see supra* at 8;

- the information FEC seeks is *irrelevant* under Rule 26 because it is not relevant to the purpose of a Rule 56(d) motion and or to any plaintiff claim or *permissible* FEC defense, given controlling precedents[19];

- FEC ignores controlling matter-of-law holdings on what is cognizable corruption or its appearance[20]; and

---

[18] As established above, *see supra* Parts I and II, the purpose of discovery under Rule 56(d) is to establish a genuine material-fact dispute. That means no discovery should be allowed beyond that scope. Of course, that means FEC should have no discovery because, as set out in the Introduction, FEC admits that this case is proper for summary judgment, which means FEC identifies no genuine material-fact dispute and thinks it should win on the law.

[19] Because the purpose of discovery under Rule 56(d) is to establish a genuine material-fact dispute, discovery as to other facts is irrelevant. And where a proposed topic is not relevant to any claim or *proper* defense, it is irrelevant.

[20] FEC may not try to prove "corruption" or its "appearance" where binding precedents hold, *as a matter of law*, that *none exists* regarding independent expenditures, independent-expenditure-only entities, and party-committee independent-expenditure activity, which holdings logically extend to party-committee NCAs.

- in any event, the burden-benefit analysis weighs heavily against FEC's proposed broad, slow-motion discovery, which burdens include (a) expense to plaintiffs, (b) time spent by plaintiffs' staff and in-house counsel to comply with discovery when their time is needed elsewhere (e.g., during a busy 2014 election cycle and in preparation for RNC's Summer meeting in August 2014, RNC's Winter meeting in January 2015, and 2016 elections), (c) intrusion into plaintiffs highly protected First Amendment activities and First Amendment-protected, private internal affairs, and (d) this Court's judicial resources.

**B. The Rule 56(d) Motion Should Be Denied as to Each of FEC's Proposed Topics.**

Based on FEC's Declaration of Counsel (Doc. 28-2), FEC suggests affidavits/declarations and discovery on several topics (Doc. 28-1). For the reasons above and below, the motion should be denied as to all topics.

Preliminarily, note two problems with the Declaration's preliminary statement that the evidence it seeks "*may* include written discovery, depositions, and expert testimony." First, the use of "may" fails Rule 56(d)'s requirements of showing necessity with specificity. This and related uses of "may" permeate the Declaration (*see, e.g.* Doc. 28-2 at 5-6 (¶ 8.e & f and ¶ 10)), all suffering from the same fatal flaw. Second, the Declaration's lumping together of "written discovery, depositions, and expert testimony" has the problem of conflating affidavits/declarations with discovery and cooperative from non-cooperative parties, which problems were both identified earlier. *See supra* at 4-6. For example, the Declaration doesn't explain with the required specificity the triable fact targeted by any specified expert report, why the report's content will create a triable fact, why FEC doesn't already have expert reports, or how long FEC's unspecified experts will take to produce reports. These problems permeate the Declaration's proposed topics.

**Opposition to Rule 56(d) Motion** 29

1. **Discovery Should Be Denied About Past Independent-Expenditure Activity and Possible Quid-Pro-Quo Exchanges.**

FEC says it "needs discovery from plaintiffs and possibly third parties to obtain evidence that political-party contribution limits continue to deter *quid pro quo* corruption and its appearance as applied to the independent expenditures plaintiffs seek to make in support of federal candidates using unlimited funds. (Nesin Decl. ¶ 8.a)." (Doc. 28-1 at 9.) This broad, amorphous proposed discovery should be denied for several reasons.

Preliminarily, FEC's intent is not entirely clear from its language, though FEC's proposed discovery *must* be clear in order to obtain such discovery because FEC is required to show with specificity how a sought fact (for which discovery is proposed) is necessary to create a genuine material-fact dispute so as to defeat a summary judgment motion on that basis. Beyond that, while it is true that contributions to party-committees have historically been restricted by contribution limits, such limits cannot be constitutionally justified *directly* as combating quid-pro-quo corruption or its appearance because the risk of quid-pro-quo corruption or its appearance only applies to contributions *to candidates*. (*See* Doc. 25-1 at 7, *quoting McCutcheon*, 134 S. Ct. at 1452.) Since a contribution to a party-committee is not a contribution to a candidate, a limit on a contribution to a party-committee would have to be based on a *circumvention* theory, in turn based on the possibility that contributions to party-committees could be used to contribute to candidates.[21] But the limit on contributions to political parties could *not* be justified based on the fact that party-committees make *independent expenditures*. This is so because independent expenditures pose no risk of circumvention (*see* Doc. 25-1 at 8-9) or of quid-pro-quo corruption or its

---

[21] However, party-committee contributions to candidates are also limited, and any particular contribution to a candidate could only be attributed to a particular contributor based on a pro-rata attribution formula, *see McCutcheon*. 134 S. Ct. at 1453, both of which reduce any circumvention risk based on the possibility of actual *contributions* to a candidate by a party-committee.

appearance, *see Citizens United*, 558 U.S. at 357, which is also true of independent-expenditure activity by party-committees, *see Colorado-I*, 518 U.S. 604. So limits on contributions to party-committees that are used for making independent expenditures, could *never* have been justified by quid-pro-quo corruption or its appearance (or by an anti-circumvention interest, for that matter). Consequently, there simply *cannot be* any "evidence that political-party contribution limits continue to deter *quid pro quo* corruption and its appearance as applied to the independent expenditures" (Doc. 28-1 at 9), whether those independent expenditures are made with contribution-limited or with "unlimited funds," *id.* Since the proposed discovery could not find facts that *cannot exist*, as a matter of law, FEC must not be allowed to engage in this proposed discovery.

Moreover, contributions to all national part-committees are subject to contribution limits and have been for years, so there can be no evidence of quid-pro-quo corruption (or its appearance) resulting from unlimited contributions to a national party-committee's NCA (which it can't have yet). FEC acknowledges this problem, though not with clarity, by saying that: "Because the federal contribution limits have been in place for many years, this evidence *could* potentially include comparative evidence from other jurisdictions or testimony concerning the historical and contemporary impact of party contribution limits on such corruption." (*See* Doc. 28-2 at 3-4 (emphasis added).) The "could" here fails Rule 56(d)'s proof of necessity with specificity for the same reason that the repeated use of "may" does. *See supra* at 29. "Testimony concerning the historical and contemporary impact of party contributions limits on [quid-pro-quo] corruption [or its appearance" (Doc. 28-2 at 4) means nothing because all federal party-committees have been subject to limits on federal-funds contributions for decades and *McConnell* cut off unlimited donations of non-federal funds (and compiled the record relating to that experience) so there is no contemporary evidence about contribution limits that hasn't been unchanged for decades or shut off since

*McConnell*. Since BCRA cut off unlimited non-federal-funds donations, and federal law has not allowed unlimited federal-funds contributions for decades, there are no unwilling witnesses as to unlimited contributions of any sort for whom FEC needs to discovery in order to compel them to produce evidence. And FEC has identified no such witnesses, as required.

To the extent FEC seeks discovery of plaintiffs' past independent expenditure activity in quest of possible quid-pro-quo corruption, such discovery should not be permitted because that has nothing to do with creating a genuine material-fact dispute under Rule 56(d). Rather it seems a fishing expedition to try to find potential noncompliance with federal law. As a matter of law, since *Colorado-I*, 518 U.S. 604, party-committees have been legally able to do independent ex-penditures because doing so poses neither quid-pro-quo corruption nor its appearance. The same is true under *McConnell*, 540 U.S. 93, because, even though *McConnell* said that party-commit-tees and candidates are "inextricably intertwined," *id.* at 155, *McConnell* held that party-commit-tees could not be forced to choose between coordinated expenditures and independent expendi-tures, 213-19, meaning that political parties are factually capable of doing independent expendi-tures, as a matter of law, even if they also do coordinated expenditures, and so have a constitu-tional right to do independent expenditures under prevailing coordination guidelines. Thus, FEC may not be permitted a fishing expedition seeking noncompliance under the guise of trying to create a legally impossible genuine material-fact dispute. This Court should not allow FEC to punish plaintiffs and third parties  by such a legally irrelevant, burdensome FEC fishing expedi-tion because plaintiffs filed a constitutional challenge to protect core First Amendment rights.

## 2.  Discovery Should Be Denied About Purported Quid-Pro-Quo Risks Posed by Party-Committees.

FEC says it "needs discovery to show the particular corruption dangers that are currently

present in the case of national, state, and local party committees, government interests that the Supreme Court has previously indicated are weighty enough to sustain contribution limits. (Nesin Decl. ¶ 8.b).” (Doc. 28-1 at 9.) That topic statement is analytically related to the prior proposed topic and should be denied for the same reasons.

But the Declaration states things differently: “Second, the Commission requires discovery concerning the relationship between the political parties and federal officeholders and candidates, and the unique role parties play in the organization of Congress.” (Doc. 28-2 at 4.) Does FEC want discovery to refute that statement? Plaintiffs don’t really think so. Plaintiffs don’t contest the fact that, as *McConnell* put it, “‘national parties operate at the national level, and are inextricably intertwined with federal officeholders and candidates,’” 540 U.S. at 155 (citation omitted). There should be no discovery on this because plaintiffs don’t contest it, so there can be no triable issue. Rather, plaintiffs say, with the Supreme Court in *Colorado-I*, 518 U.S. 604, that the fact that parties and candidates are joined at the hip, so to speak, does not affect their constitutional right to engage in independent-expenditure activity, which poses no quid-pro-quo corruption or its appearance. And plaintiffs agree with *McConnell*, which said the fact that parties and candidates are inextricably intertwined does not mean that party-committees do not have a constitutional right to engage in independent-expenditure activity, even if they also do coordinated expenditures, and may not be forced to choose between the two. 540 U.S. at 213-19. FEC has not shown who has evidence to the contrary to create a triable fact.

Here as with all of its discovery topics, FEC fails to identify with specificity a particular, genuine material-fact dispute it wishes to develop that will preclude summary-judgment based on a factual dispute—which is the purpose of Rule 56(d). The only dispute it attempts to create is as to the *legal* question of whether party-committees or the independent expenditures of party-com-

mittees create quid-pro-quo corruption or its appearance. They do not, which was well-settled in *Colorado-I*, 518 U.S. 604. And as noted regarding the previous proposed topic, the limit on contributions to party-committees was necessarily based on the fact that party-committees might make *contributions* to candidates, not independent expenditures. *See supra* at 30-31. So there is *no* constitutionally cognizable interest justifying limits on contributions to party-committees that applies to independent expenditures or party-committee's independent-expenditure activity. Thus, there is no factual issue relevant to any claim or permissible defense in this case. This Court should not authorize an FEC fishing expedition for reasons further stated in Part III.B.1.

### 3. Discovery Should Be Denied About Public Perceptions Regarding "Appearance" Where Matter-of-Law Holdings Control.

FEC asserts that "*appearance* of corruption" is sufficiently "distinct" from quid-pro-quo corruption (Doc. 28-1 at 9), and that FEC should be able to probe "public" perceptions of whether there is such an appearance (Doc. 28-2 at 4 (Nesin Decl. ¶ 8 c)). This proposed discovery should be denied for several reasons.

First, of course, this is not about creating a material genuine-fact dispute to defeat summary judgment on a factual dispute, as Rule 56(d) requires. Rather, it is about an effort to evade well-settled, matter-of-law holdings. The "appearance of corruption" is not a free-floating interest subject to public-opinion polling or the like. Rather, cognizable corruption is only quid-pro-quo corruption, *see, e.g.*, *Citizens United*, 558 U.S. at 359, so any relevant "appearance" must be the appearance *of quid-pro-quo corruption*. But, as a *matter of law*, (a) independent expenditure pose no cognizable risk of either such corruption *or its appearance*, *id.* at 357, (b) as a consequence unlimited contributions to independent-expenditure only entities (such as NCAs) pose no cognizable risk of either such corruption *or its appearance*, *SpeechNow*, 599 F.3d at 696, and (c)

party-committee independent-independent activity poses no cognizable risk of corruption *or its appearance*, *Colorado-I*, 518 U.S. 604. Consequently, as a matter of law, there can be no appearance of corruption in unlimited contributions for independent expenditures to a party-committee's NCA. Since this is settled as a matter of law, FEC may not do discovery in an effort to overturn these matter-of-law holdings. Nor does the Declaration's invocation of *McConnell* change any of this, because both *McConnell*, 540 U.S. at 145 n.45, and *Citizens United*, 558 U.S. at 361, distinguished the independent-expenditure line of cases, at issue here and in *Citizens United*, from *McConnell*'s soft-money context. But even *McConnell*, which said that party-committees and candidates are "inextricably intertwined," 540 U.S. at 155, held that party-committees could not be forced to choose between coordinated expenditures and independent expenditures, *id.* at 213-19, meaning that political parties are factually capable of doing independent expenditures, as a matter of law, even if they also do coordinated expenditures, and so have a constitutional right to do independent expenditures under prevailing coordination guidelines with no cognizable appearance of corruption. FEC may not be permitted to do discovery in an effort to overturn these matter-of-law holdings.

The Declaration says "there *may* be additional evidence available about whether" "accepting unlimited contributions for the purpose of engaging in [independent expenditures]." (Doc. 28-2 at 4 (¶ 8.c) (emphasis added).)[22] But facts can't exist about something that the Declaration agrees has never happened. (*Id.*) And FEC provides no evidence that people have such needed facts but are unwilling to produce them so that discovery is needed to compel them. Rather, FEC must be planning to take polls and put in expert testimony based on such polls. But FEC fails its Rule 56(d) duty to show what material-fact dispute it targets, how the polls or expert testimony would

---

[22] "May" fails FEC's Rule 56(d) burden as to necessity, specificity, and proven availability.

create a triable fact (especially in light of the matter-of-law holdings about independent-expenditure activity set out above), who are its experts, why they have been unable to provide their reports, and how long it will take for them to do so. For expert reports, no "discovery" is needed, but FEC must meet its Rule 56(d) duty.

### 4. Discovery Should Be Denied About Whether Plaintiffs Argue a Theory About Their Resources that They Have Not Argued.

FEC asserts that it "needs discovery regarding whether plaintiffs contend they lack the resources for effective advocacy under the existing contribution limits." (Doc. 28-1 at 9.) Plaintiffs have made no such contention and do not make it now. So there should be no discovery about such a contention or about plaintiffs' resources related to such a claim that they don't make. Plaintiffs do recite that "[i]n a political world dominated by IE-PACs, hybrid PACs, and NCAs, party committees are at distinct disadvantage" (Doc. 25-1 at 3), but that is not the same as saying that party-committees can't do "effective advocacy." Plaintiffs' claim is that government lacks any cognizable interest, under well-settled, controlling, matter-of-law holdings, to regulate the independent-expenditure activity they intend. That is an entirely different constitutional analysis than the one FEC suggests, for which it can have no discovery.

### 5. Discovery Should Be Denied About How the NCAs Will Be Operated.

FEC asserts it "*may* seek discovery regarding the manner in which plaintiffs will raise and spend the unlimited funds they seek." (Doc. 28-1 at 9 (emphasis added).) The use of "may" emphasizes how this proposed discovery is not about FEC seeking discovery necessary to establish a triable fact required to defeat summary judgment. But even if FEC *will* do such discovery, if allowed, it still fails Rule 56(d)'s requirements and is based on flawed legal notions.

Plaintiffs' NCAs will be operated *legally* under the statutes and regulations *then in effect*

when the NCAs are permitted to operate. If the laws and regulations change, the NCAs will oper-

ate in compliance under the new laws and regulations. If they don't do so, then there would be a

factual question about whether they are in compliance and if they are not in compliance they

would have to come into compliance and might be subject to penalties for having been out of

compliance. Those are not issues at all relevant to the present. The legal issue here is whether the

government may *categorically prohibit party-committees from setting up an NCA*, i.e., whether

government may prevent plaintiffs from having NCAs that *operate in compliance* with applica-

ble law. Party-committee NCAs would be new entities, never having operated before, so there is

nothing to discover about how they *have* operated. And as to how they *would* operate, as noted

above, they would operate in compliance with applicable laws, regulations, instructions, advisory

opinions, guidelines, and so on. There are no facts to discover there, let alone any that would cre-

ate a genuine, material-fact dispute, as required by Rule 56(d).

Moreover, *no on else* has to establish in detail how they will operate their NCA to get ap-

proval for one. They don't even have to *get* approval in order to operate an NCA. Under FEC's

*NCA-Guidelines* an existing political committee may just *notify* FEC that it is establishing an

NCA and it *has* one, without more (assuming of course it *then* acts in compliance with applicable

laws and regulations). Setting up an NCA is not like getting IRS recognition for nonprofit status

under 26 U.S.C. 501(c), where much documentation and explanation is required. Party-commit-

tees should not have to do more than others to set up an NCA where the government lacks any

cognizable interest in preventing them from doing so.

And of course, that gets back to the constitutional issues. FEC suggests that somehow the

foregoing proposed discovery would inform "the proportionality of a political-party contribution

limit to further the important interest in combating corruption." Doc. 28-1 at 9-10. "Proportional-

ity" is not a constitutionally cognizable concept, under either strict or exacting scrutiny, especially where FEC lacks *any* cognizable interest in restricting either independent expenditures, contributions to independent-expenditure entities, or party-committee independent expenditures, so that a party-committee doing independent expenditures through an NCA would likewise pose no cognizable interest.

In any event, FEC fails its Rule 56(d) duties to say *what* evidence it seeks, how such unspecified evidence will create a triable fact, and so on. And once again, FEC says "[t]his discovery may take the form of expert testimony, depositions, or written testimony" (Doc. 28-2 at 5 (¶ 8.e) (emphasis added)), which fails because of the recurring "may" problem and the conflation of affidavits/declarations with discovery, and cooperative witnesses with uncooperative ones, and so on as discussed above. *See supra* at 4-6, 29.

### 6. Discovery Should Be Denied About All Topics for Similarly Situated Groups.

FEC asserts that it should be allowed to impose discovery on all preceding topics on similarly situated groups. (Doc. 28-2 at 5 (¶ f).) Because FEC is entitled to no discovery as to any topic, it should not be authorized by this Court to turn loose its fishing expedition on third parties. The use of "may" fails FEC's duty of necessity and specificity. And FEC again fails its Rule 56(d) duties to say who it wants to dispose, why they won't cooperate so that subpoena power is needed, what triable fact is targeted, how the discovery will achieve it, and so on.

### 7. Discovery Should Be Denied About Whether Individual Plaintiffs Are Registered Voters.

FEC asserts that it needs discovery about whether Plaintiffs Priebus and Villere are "registered voters." (Doc. 28-2 at 6 (¶ g).) Really? This has nothing to do with creating a genuine material-fact dispute, as required by Rule 56(d). It is irrelevant to any claim or defense. It's only

possible relevance is to FEC's assertion that some of the claims herein are not subject to BCRA

§ 403 judicial proceedings but should be pursued *under 2 U.S.C. 437h*, which procedure is open

to FEC, national-party committees, and "any individual eligible to vote in any election for the

office of President." The requirement is not that the individual be a "registered voter," only that

he or she be "eligible to vote in any election for the office of President." And in the Verified

Complaint, Plaintiffs Priebus and Villere verified under penalties for perjury that they are "eligi-

ble to vote in an election for the office of the President of the United States.'" (Doc. 1 at 5-6

(¶¶ 12, 14).) What could be clearer? And FEC *admits* that Priebus and Villere meet § 437h's ac-

tual eligible-voter requirement. (*See* Answer (Doc. 29) at ¶¶ 12, 14.) FEC said it needed no

"standing discovery," which this discovery would be if any part of the case were to be decided

under § 437h. But anyway, this case qualifies for BCRA § 403's judicial proceedings, making

this all irrelevant on that ground.

In ¶ 9 of the Declaration, FEC claims that "[t]he facts [it] seeks are discoverable." (Doc. 28-2

at 6.) As discussed at length in this opposition, FEC has the constitutional burden to prove that it

has a cognizable governmental interest for categorically banning a party-committee from setting

up an NCA (or for barring plaintiffs' other intended independent activity) and that this categori-

cal ban is properly tailored to that interest. The only possible, cognizable interest for this categor-

ical ban is preventing quid-pro-quo corruption or its appearance. (*See* Doc. 25-1 at Parts I-II.) But

binding, matter-of-law opinions hold that neither quid-pro-quo corruption or its appearance re-

sults from independent expenditures, *Citizens United*, 558 U.S. at 357, or from independent-

expenditure-only entities (such as NCAs), *SpeechNow*, 599 F.3d at 696, or from

party-committee independent expenditures, including non-express-advocacy independent com-

munications, *Colorado-I*, 518 U.S. 604. This is so even under *McConnell*, which pronounced

party-committees and candidates "inextricably intertwined," 540 U.S. at 155, yet held that party-committees had a constitutional right to make independent expenditures, even if they also did coordinated expenditures, because party-committee independent expenditures not risk of quid-pro-quo corruption or its appearance, *id.* at 213-19. Recognizing a party-committee's First Amendment right to set up an NCA in order to pool resources with non-corrupting contributors for core political speech is a straightforward application of all these holdings finding neither quid-pro-quo corruption nor its appearance. (*See* Doc. 25-1 at Parts III-V.) Therefore, there are no *facts* about corruption or its appearance for FEC to discover, *as a matter of law*, and FEC's assertion that "[t]he facts [it] seeks are discoverable" is wrong.

In ¶ 9, FEC makes two further claims that are wrong. First, FEC claims that "the discovery [it] seeks is relevant to ... jurisdiction." (Doc. 28-2 at 6 (¶ 9).) But as explained above, *supra* at 38-39, there is no triable fact over whether Plaintiffs Priebus and Villere are eligible voters, so Rule 56(d) may not be invoked on that ground. Second, FEC claims that "the discovery [it] seeks is relevant to ... the Commission's defense of the constitutionality of FECA." (Doc. 28-2 at 6 (¶ 9).) But discovery must be relevant to a *permissible* defense based on a *cognizable* interest, and FEC's defense—which says there *is* (or at least *might be*, if FEC could only find it) quid-pro-quo corruption or its appearance where binding, matter-of-law holdings say there is *none*—is not a permissible defense based on a cognizable interest. FEC must not be allowed a punishing fishing expedition for facts that, as a matter of law, are unavailable because, as a matter of law, the intended independent-expenditure activity is constitutionally protected since there is neither quid-pro-quo corruption nor its appearance.

In ¶ 10, FEC thrice more resorts to its use of "may": (i) it "may" do paper discovery, (ii) it "may" do depositions, and (iii) it "may seek testimony from expert witnesses." (Doc. 28-2 at 6

(¶ 10).) As explained above, *supra* at 29, FEC's use of "may" dooms its Rule 56(d) motion for failing (i) to show the *necessity* of the facts it seeks and the means to obtain them and (ii) to state with sufficient *specificity* what *triable fact* it seeks to establish; how a particular fact sought will establish that triable fact; how the discovery sought will establish that triable fact; why the fact is discoverable at all when matter-of-law holdings say there is no fact to discover regarding quid-pro-quo corruption or its appearance in this context; what third parties FEC wants to discover on what subjects and which ones are non-cooperative (and why) so that FEC needs subpoenas to compel them to respond; what expert testimony FEC intends, on what *permissible* subjects (the "risks of corruption, the appearance of corruption, and the circumvention of the law" are not per-missible because they are not cognizable in the independent-expenditure context, as a matter of law); why its experts have been unable to produce a report; how long will be needed for the ex-pert to do so; and so on. FEC was required under Rule 56(d) to show with such specificity the necessity of a continuance (or dismissal of the summary judgment motion) under Rule 56(d).

In any ordinary case, such as one involving a FOIA request, a Rule 56(d) movant must "offer ... specific reasons demonstrating the necessity and utility of discovery to enable [the movant] to fend off summary judgment" by creating a triable fact. *Strang*, 864 F.2d at 861. *A fortiori* this necessity-specificity requirement must also apply to Rule 56(d) motions in cases involving core political speech. *Citizens United* reemphasized the vital importance of such speech:

> Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people. See *Buckley*, [424 U.S.] at 14–15 ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential"). The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it. The First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223 (1989) (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)); see *Buckley*, supra, at 14 ("Discussion of public issues and debate on the qualifications of candidates are integral to the

operation of the system of government established by our Constitution").

*Id.* at 339-40. The Court added: "For these reasons, political speech must prevail against laws that would suppress it, whether by design or inadvertence," so that " [l]aws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Id.* (quoting *WRTL-II*, 551 U.S. at 464). If free expressive association involving political speech is subject to higher scrutiny than less-protected activity, it cannot be subject to lower protections than less-protected activity under Rule 56(d)'s necessity-specificity requirement. Yet that is what FEC attempts to do here by making a Rule 56(d) motion without the requisite showing of necessity by specificity. And the lesson of *WRTL-II* must be recalled, where FEC's "extensive discovery" based on a legal theory that had long been rejected as a matter of law was pronounced "a severe burden on political speech." 551 U.S. at 468 n.5 (controlling opinion). Based on that experience, *WRTL-II* provided express instructions regarding discovery, which should also control similar free-political-speech cases, such as the present one: "[T]he proper standard for an as-applied challenge .... must entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation. See *Virginia v. Hicks*, 539 U.S. 113, 119 (2003)." 551 U.S. at 469. As in *WRTL-II*, plaintiffs here seek an as-applied holding based on well-settled, matter-of-law holdings, and FEC must not be allowed to impose a severe litigation burden.

In sum, FEC should be denied discovery on all of its discovery topics. This case is about the straightforward application of well-settled matter-of-law holdings in controlling cases, such as *Colorado-I*, *Citizens United*, and *SpeechNow*. Neither paper discovery, depositions, nor expert reports on any of the proposed topics is permissible to counter these matter-of-law holdings. And

FEC has failed to meet Rule 56(d) necessity-specificity requirement.

## IV. Any Permitted Discovery Should Be Narrow and Expedited.

As shown, FEC should be permitted no discovery. But if this Court were to grant discovery on any of FEC's topics, the focus should be narrow to protect plaintiffs' First Amendment rights. For example, internal communications of party-committees, and especially those about campaign plans and strategy, are protected by the First Amendment's powerful protections for associational rights. And the benefits-burden analysis requires that any discovery in a case to vindicate core political rights of free speech and free association should not be exercised in a manner to burden those very rights exercised in the ongoing functions of plaintiffs in operating political parties and participating in election-related activities in the 2014 and 2016 election cycles. And any discovery should be strictly targeted at Rule 56(d) requirements of establishing a genuine material-fact issue. Finally, any discovery should be expedited. First Amendment rights delayed are constitutional rights denied.

## Conclusion

This Court should deny FEC's Rule 56(d) motion. In the event any discovery were to be permitted, it should be narrow and expedited.

Respectfully submitted,

/s/ James Bopp, Jr.
James Bopp, Jr., DC Bar #CO 0041
jboppjr@aol.com
Richard E. Coleson*
rcoleson@bopplaw.com
Randy Elf*
relf@bopplaw.com

THE BOPP LAW FIRM, PC
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/235-3685 facsimile
*Counsel for Plaintiffs*

*Admitted Pro Hac Vice

## Certificate of Service

I certify that today I electronically filed the foregoing with the clerk of court using the

CM/ECF system, which will notify:

Kevin Deeley                          KDeeley@fec.gov
                                      JSadio@fec.gov
                                      RFreeman@fec.gov
                                      VGraham@fec.gov

Harry Summers                         HSummers@fec.gov,
                                      JSadio@fec.gov
                                      KDeeley@fec.gov
                                      RFreeman@fec.gov
                                      VGraham@fec.gov

Erin Chlopak                          EChlopak@fec.gov
                                      DKolker@fec.gov
                                      JSadio@fec.gov
                                      KDeeley@fec.gov
                                      VGraham@fec.gov

Greg Mueller                          GMueller@fec.gov,
                                      EChlopak@fec.gov
                                      JSadio@fec.gov
                                      KDeeley@fec.gov
                                      VGraham@fec.gov

Seth Nesin                            SNesin@fec.gov
                                      JSadio@fec.gov
                                      KDeeley@fec.gov
                                      RFreeman@fec.gov
                                      VGraham@fec.gov

Charles Kitcher                       CKitcher@fec.gov


August 6, 2014                        /s/ James Bopp, Jr.
                                      James Bopp, Jr., DC Bar #CO 0041