# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, *et al.*,       Plaintiffs, | )<br>)<br>)<br>)   Civ. No. 14-853 (CRC)<br>) |
| v. | )<br>) |
| FEDERAL ELECTION COMMISSION,       Defendant. | )   REPLY<br>)<br>)<br>) |

**DEFENDANT FEDERAL ELECTION COMMISSION'S REPLY
IN SUPPORT OF ITS MOTION TO ALLOW TIME
FOR DISCOVERY UNDER RULE 56(d)**

Lisa J. Stevenson
Deputy General Counsel – Law

Kevin Deeley
Acting Associate General Counsel

Harry J. Summers
Assistant General Counsel

Greg Mueller
Seth Nesin
Charles Kitcher
Attorneys

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
(202) 694-1650

August 18, 2014

**TABLE OF CONTENTS**

**Page**

I.   A RECORD IS REQUIRED FOR FACTUAL QUESTIONS REGARDING THE DANGER OF CORRUPTION RESULTING FROM UNLIMITED CONTRIBUTIONS FOR POLITICAL-PARTY INDEPENDENT EXPENDITURES ...........................................................................2

II.  THE COMMISSION HAS ESTABLISHED THAT A REASONABLE DISCOVERY PERIOD IS APPROPRIATE IN THIS CASE ........................................5

    A.   Under Rule 56(d) Plaintiffs' Distinction Between Formal and Informal Discovery is Irrelevant ..................................................................5

    B.   The Declaration the Commission Submitted Provides the Requisite Level of Specificity..............................................................................8

    C.   Numerous Similar Cases Involve Similar or Lengthier Discovery Periods and There is No Basis for Denying Discovery in this Case ......................................................................................10

III. CONCLUSION................................................................................................12

The Court should grant the Federal Election Commission's ("FEC" or "Commission") Rule 56(d) motion requesting that it have an opportunity to conduct discovery in this case. In its opening brief and accompanying Rule 56(d) declaration (Docket Nos. 28-1, 28-2), the Commission demonstrated that plaintiffs filed their motion for summary judgment prematurely and that, without discovery, the agency cannot present facts essential to its opposition. In response to that motion, plaintiffs press their theory of the case on the merits, but have not undermined the Commission's showing. Plaintiffs urge the Court to invalidate longstanding political-party contribution limits, prohibitions on receiving and spending soft money, and associated prohibitions on the solicitation of soft money, on the eve of a federal election, without permitting the government the benefit of *any* discovery.

Plaintiffs fail to counter the Commission's showing that their summary judgment motion — filed before the Commission had even answered their complaint — would deny the FEC the time for discovery that due process requires. And they entirely fail to distinguish the long line of cases similar to this one in which courts have allowed the Commission a period of discovery for development of such evidence. Plaintiffs instead claim that this case presents purely legal questions because independent expenditures cannot lead to corruption as a matter of law, but as explained below plaintiffs substantially misstate the holdings upon which they rely. Plaintiffs also claim that the detailed memorandum and declaration submitted by the Commission fails to establish additional discovery is necessary in this case, but the Commission's showing readily meets the requirements of Rule 56(d).

Accordingly, the Court should grant the Commission's motion.

I.  **A RECORD IS REQUIRED FOR FACTUAL QUESTIONS REGARDING THE DANGER OF CORRUPTION RESULTING FROM UNLIMITED CONTRIBUTIONS FOR POLITICAL-PARTY INDEPENDENT EXPENDITURES**

Plaintiffs' opposition rests on the mistaken premise that evidence is completely unnecessary in this case because unlimited contributions for independent expenditures as a matter of law cannot lead to corruption or its appearance. (Pls.' Opp'n to FEC's Rule 56(d) Mot. ("Pls.' Opp'n") at 3, 17-22, 31 (Docket No. 30).) However, courts have found that contributions to political parties pose a danger of corruption, even if contributions to PACs for independent expenditures do not. Plaintiffs ignore this distinction, and premise their opposition on what amounts to an oversimplified slogan, repeated throughout their brief, that independent expenditures cannot corrupt as a matter of law. (Pls.' Opp'n at 3, 17-22, 31, 34-35, 39, 42.) The cases on which plaintiffs rely, however, only held that contributions to PACs do not pose a danger of corruption, specifically because they are *not political parties*. As a result, those cases undermine rather than support their position here. (Pls.' Opp'n at 17-21(Docket No. 30).)

Plaintiffs rely on *SpeechNow.org v. FEC*, in which the D.C. Circuit held that contribution limits could not constitutionally be applied to PACs that engaged solely in independent expenditures, explaining that "contributions to groups that make *only* independent expenditures also cannot corrupt or create the appearance of corruption." 599 F.3d 686, 694 (D.C. Cir. 2010) (*en banc*) (emphasis added). The Court of Appeals went on to acknowledge that the plurality opinion for the Supreme Court in *Colorado Republican Federal Campaign Committee v. FEC*, 518 U.S. 604, 617 (1996), had indicated that independent expenditures could still lead to corruption or its appearance, but distinguished that case by noting that "*Colorado Republican* concerned expenditures by political parties." 599 F.3d at 695. The court concluded by cautioning that "[w]e should be clear, however, that we only decide these questions as applied to

contributions to SpeechNow, an independent expenditure-only group." *Id.* at 696.

Plaintiffs also rely on *Carey v. FEC*, (Opp'n at 26-27), a decision in this District holding that a single nonconnected PAC could operate a segregated independent expenditure account that accepted unlimited contributions, while also accepting hard-money funds in a different account for the purpose of candidate contributions. 791 F. Supp. 2d 121, 125-26 (D.D.C. 2011). At the same time, however, *Carey* reaffirmed that contribution limits were constitutional for "political party committees because of the 'close relationship between candidates and parties.'" *Id.* at 125 (quoting *EMILY's List v. FEC*, 581 F.3d 1, 9 (D.C. Cir. 2009)). The court explained that "non-connected non-profits are *not* the same as political parties and do *not* cause the same concerns." 791 F.Supp. 2d at 131.

Plaintiffs also fail to address the D.C. Circuit's decision drawing a sharp distinction between PACs and political party committees. In *EMILY's List v. FEC*, the Court of Appeals struck down FEC regulations related to mixed federal and nonfederal activities because they infringed upon the First Amendment rights of a PAC that wished to engage in "election-related activities such as advertisements, get-out-the-vote efforts, and voter registration drives." 581 F.3d at 5, 24. But the *EMILY's List* opinion repeatedly stated that the outcome of the case would have been governed by *McConnell* and come out the other way if the challenge had come from a political party rather than a PAC. Plaintiffs suggest the Commission should not be allowed to "escape the controlling effect of matter-of-law holdings" or conduct discovery regarding "non-'relevant' constitutional analysis" such as the potential for corruption stemming from unlimited contributions used to fund independent expenditures. (Pls.' Opp'n at 18 (Docket No. 30).) The holdings to which they refer do not, however, apply to political party committees like the plaintiffs.

*EMILY's List* emphasized at length the uniqueness of political party committees. The Court of Appeals first noted that contribution limits to candidates could be limited and, due in part to "the close relationship between candidates and parties . . . the [Supreme] Court has held that the anti-corruption interest also justifies limits on contributions to *parties*." 581 F.3d at 6. The court then characterized its constitutional analysis as a question of "whether independent non-profits are treated like individual citizens (who under *Buckley* have the right to spend unlimited money to support their preferred candidates) or like political parties (which under [*McConnell v. FEC,* 540 U.S. 93 (2003)] do not have the right to raise and spend unlimited soft money)." *Id.* at 8 (footnote omitted). It concluded that "non-profit groups do not have the same inherent relationship with federal candidates and officeholders that political parties do." *Id.* at 14. The court approvingly quoted the plaintiff attorney's conclusion that the FEC had mistakenly "brought to bear what was essentially a political party analysis to a non-connected, independent committee which is not under the control of, or associated with candidates in the fashion of a political party." *Id.* at 15 (citation and internal quotations omitted). And the court noted that its holding would "permit non-profits to receive and spend large soft-money donations when political parties and candidates cannot." *Id.* at 19.[1]

Plaintiffs' argument that "this case is based on the application of matter-of-law holdings to the present case" and that "no proof of quid-pro-quo corruption, or its appearance, is possible, as a matter of law" (Pls.' Opp'n at 21 (emphasis omitted)) is unsupported by the authority on which it relies. None of the cases plaintiffs cited (*id.* at 10-27) support the view that parties

---

[1] Decisions from other Circuits similarly make clear that parties should be treated differently from PACs. *See, e.g.*, *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 292-93 (4th Cir. 2008) ("*McConnell* specifically emphasized the difference between political parties and independent expenditure political committees, which explains why contribution limits are acceptable when applied to the former, but unacceptable when applied to the latter").

4

should be treated like PACs, and virtually all of the cases specifically state, to the contrary, that political parties do not have a constitutional right to collect unlimited contributions to spend on independent expenditures.  Accordingly, plaintiffs' conclusion that discovery is unnecessary because independent expenditures cannot corrupt as a matter of law and therefore the information sought "cannot exist as a matter of law" (*id.* at 31) is baseless.

## II.     THE COMMISSION HAS ESTABLISHED THAT A REASONABLE DISCOVERY PERIOD IS APPROPRIATE IN THIS CASE

In its opening brief, the FEC explained that because due process entitles parties to a full opportunity to present their case, summary judgment is appropriate only after adequate time for discovery.  (*See* FEC's Mem. in Supp. of Mot. to Allow Time for Disc. Under Rule 56(d) and in Opp'n to Pls'. Mot. for Summ. J. ("FEC Mem.") at 5-11 (Docket No. 28-1).)   As explained below, plaintiffs' unsupported interpretation of the Federal Rules governing discovery and unfounded challenge to the adequacy of the declaration supporting the Commission's 56(d) motion fail to undermine the Commission's motion.

### A.     Under Rule 56(d) Plaintiffs' Distinction Between Formal and Informal Discovery is Irrelevant

To support their opposition, plaintiffs argue that the Commission did not show the requisite detailed need for formal discovery.  (Pls'. Opp'n at 4-9.)  Plaintiffs draw a meaningless distinction between seeking information between willing and unwilling parties, arguing that a discovery period is unnecessary for the former.  (Pls'. Opp'n at 4-5.)  Plaintiffs claim that "if third parties are *willing* to provide facts, they simply can do so, so 'discovery' is *unnecessary* because no coercive power is required."  (Pls'. Opp'n at 5.)  Rule 56(d) is not so limited regarding the methods that may be used to obtain evidence.  The relief available under the rule provides "*time to obtain* affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(2)

5

(emphasis added). The rule is not limited to particular methods used to obtain the information and denying such a motion "is disfavored when additional development of facts might illuminate the issues of law requiring decision." *Seed Co., Ltd. v. Westerman*, 840 F. Supp. 2d 116, 124 (D.D.C. 2012) (quoting *Barnes v. D.C.*, 242 F.R.D. 113, 116 (D.D.C 2007)); *McNair v. D.C.*, 903 F. Supp. 2d 71, 77 (D.D.C. 2012) (denying summary judgment in absence of discovery period).

A complete denial of any discovery period would place before the Court review of longstanding statutory provisions without the benefit of a full record. When confronted with such an absence of a record, the D.C. Circuit explained in one case that "[u]nfortunately, neither we nor the district court are in a position to decide as a matter of law whether there is a genuine dispute here because the district court did not permit . . . any discovery before issuing its ruling." *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1035 (D.C. Cir. 2003). The Court of Appeals explained that "[u]nder these circumstances, it was inappropriate for the district court to grant summary judgment without first giving [the parties] a chance to conduct discovery." *Id.*

The cases upon which plaintiffs rely provided lengthy initial discovery periods followed by additional time for discovery pursuant to Rule 56(d), and thus are of little value in evaluating a case like this one where there has been no discovery period. Plaintiffs heavily rely on *First National Bank of Arizona v. Cities Services Company*, a case involving well over 5 years of discovery and 150 days of deposition time. 391 U.S. 253, 263 (1968). Plaintiffs suggest that *Cities Services* draws an important distinction between Rule 56(d) that "provides for comparatively limited discovery for the purpose of showing facts sufficient to withstand a summary judgment motion . . . [while] Rule 26 provides for broad pretrial discovery." (Pls'.

6

Opp'n at 8-9.) But that case did not provide for limited discovery in the way plaintiffs suggest. *Cities Services* actually serves as an example of a substantial discovery period pursuant to Rule 26(d), augmented by an order providing for several additional days of deposition time pursuant Rule 56(d). 391 U.S. at 268. Rather than providing support for plaintiffs' position that discovery should be denied entirely, the case highlights the reasonableness of the comparably short discovery period requested by the Commission here.

Plaintiffs also rely on *Libertarian Party of New Mexico v. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007), for the proposition that historical evidence cannot be assembled following a Rule 56[(d)] motion. (Pls.' Opp'n at 10.) In that case, however, the court expressly did not reach the appropriate scope of discovery, holding that it "need not, however, resolve this issue." *Id.* at 1308. The court explained that a summary declaration supporting a 56(d) motion was inadequate in that case based on standards easily satisfied by the Commission here. 506 F.3d at 1309; *see infra* 8-10. None of this authority provides support for plaintiffs' extreme position that no discovery is appropriate here.[2]

---

[2] Other cases on which plaintiffs rely are far afield from the posture of this case. In *Keebler Co. v. Murray Bakery Products*, the movant relied "entirely on its having had no discovery at all" in its Rule 56(d) declaration and did not make the requisite showing of need. 866 F.2d 1386, 1390 (Fed. Cir. 1989). Plaintiffs also rely on a FOIA case, *Strang v. United States Arms Control and Disarmament Agency*, 864 F.2d 859 (D.C. Cir.1989), but courts have a longstanding practice of resolving FOIA cases, which largely turn on the validity of FOIA exemptions, based on a detailed declaration and index. *See Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) (explaining "[d]iscovery is generally unavailable in FOIA actions"); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (establishing what became known at the *Vaughn* index). Plaintiffs also discuss *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006), but in that case the court declined to permit additional discovery based on the extensive and clear record regarding the circumstances surrounding the specific individual arrest by law enforcement at issue.

Plaintiffs fail to address the Commission's showing that numerous similar constitutional challenges to the Federal Election Campaign Act, including recent cases following *Citizens United v. FEC*, 558 U.S. 310 (2010), involved lengthier periods of time.  (FEC Mem. at 6-7.)

### B. The Declaration the Commission Submitted Provides the Requisite Level of Specificity

The Commission's supporting declaration fully satisfies this Circuit's requirements for a declaration under Rule 56(d).  (*See* Decl. of Counsel in Supp. of FEC's Mot. to Allow Time for Disc. Under Rule 56(d) ("56(d) Decl.") (Docket No. 28-2).)  Such a declaration must outline particular facts, show why those facts are not produced in opposition to the current summary judgment motion, and show that the information is discoverable.  *See Convertino v. United States Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012).  The declaration the Commission submitted in support its 56(d) motion meets this standard.  It outlines particular facts that are necessary to discover in light of the operative legal standards, explains why those facts have not been produced, and shows how they are discoverable.  (*See* 56(d) Decl. ¶¶ 4-5, 8(a)-(g), 9-10.)  Specifically, the Commission seeks discovery regarding the following categories of facts to defend this case:

- Evidence confirming that the political-party contribution limits continue to deter *quid pro quo* corruption as applied to funds to be raised in unlimited amounts to finance party independent expenditures in support of federal candidates.  (56(d) Decl. ¶ 8(a).)

- Evidence regarding the relationship between the political parties and federal officeholders and candidates, and the unique role political parties play in the organization of Congress, with a particular focus on the dangers of *quid pro quo* corruption and its appearance.  (*Id.* ¶ 8(b).)

8

- Evidence regarding how the relationships between political parties and their candidates and officeholders are perceived by voters.  (*Id.* ¶ 8(c).)

- Evidence regarding whether plaintiffs contend they lack the resources for effective advocacy under the existing contribution limits.  (*Id.* ¶ 8(d).)

- Evidence that any constitutional burdens imposed by the challenged FECA provisions are justified, because the statutes are closely drawn to further an important government interest.  (*Id.* ¶ 8(e).)

These detailed areas for discovery are directly tied to the legal standards on which this case will be decided.  (*Id.* ¶ 8.)  The declaration shows those facts were not produced in opposition to plaintiff's motion because plaintiffs prematurely filed their summary judgment motion just days after the Rule 26(f) conference and before the deadline for the Commission to file its responsive pleading.  (*See* 56(d) Decl. ¶¶ 5, 6.)  Plaintiffs cannot deny the Commission discovery under Fed. R. Civ. P. 26(d) simply by filing a premature summary judgment motion.  Such a practice would squarely run afoul of the general rule that "summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'"  *Convertino*, 684 F.3d at 99 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986)); *see* FEC's Opp'n to Pls.' Mot. to Expedite at 5-11 (Docket No. 18).  Due process requires courts to "afford the parties a full opportunity to present their respective cases" before ruling on the merits.  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (citation and quotation marks omitted).  Finally, the declaration showed that this information is discoverable, describing within each paragraph how it could be obtained, *e.g.*, through discovery of parties, third parties, or expert testimony.  Because the Commission demonstrated that time for additional discovery should be granted as a

matter of course, a point which plaintiffs failed to (and cannot) refute, the Court should permit the requested discovery.  (FEC Mem. at 8 (citing *Convertino*, 684 F.3d at 99).)

### C. Numerous Similar Cases Involve Similar or Lengthier Discovery Periods and There is No Basis for Denying Discovery in this Case

The Commission also demonstrated the fundamental importance of creating a full factual record in cases involving constitutional challenges to FECA, citing numerous federal campaign finance cases involving discovery periods similar to what the Commission has requested here.  (FEC Mem. at 6-7 (citing 10 similar cases).)

The few cases cited by plaintiffs do not suggest otherwise.  Plaintiffs rely (Pls.' Opp'n at 17-18) on the controlling opinion in *FEC v. Wisconsin Right to Life, Inc. v. FEC*, 551 U.S. 449, 468 n.5, 469 (2007) ("*WRTL*") (plurality) for its broad-brush endorsement of limits on discovery when determining whether particular communications are properly subject to regulation under a particular standard.  *WRTL* does not address the type of discovery sought in this case, however.  Unlike here, the plaintiffs in *WRTL* challenged a law that prohibited certain entities from directly financing certain types of political speech.  Because the relevant question in *WRTL* was whether the plaintiff could be prohibited from spending its corporate funds to pay for particular advertisements, the Court applied strict scrutiny and set forth a standard consistent with its prior holding that BCRA's spending restrictions on electioneering communications was constitutional "to the extent the speech in question was the 'functional equivalent' of express campaign speech."  *Id.* at 456 (quoting *McConnell*, 540 U.S. at 204-05, 06).  The controlling opinion in *WRTL* was specifically concerned about setting a workable standard that did not require discovery into the personal, subjective intent of persons financing certain communications.  It said nothing about the propriety or scope of discovery in constitutional challenges generally, or

in cases like this one challenging laws limiting the amount of contributions and not prohibiting any speech.[3]

Plaintiffs' reliance (at 25-26) on *Citizens United* and *McCutcheon* is similarly misplaced. *Citizens United v. FEC*, 558 U.S. 310 (2010); *McCutcheon v. FEC*, 134 S. Ct. 1434 (2014). Like *WRTL*, the quoted language from *Citizens United*, 558 U.S. at 333-34, addresses the possibility of protracted litigation resulting from determinations about whether particular communications met a multi-factor regulatory test. *McCutcheon* similarly provides no guidance regarding discovery when sought in district courts. Although it is true that neither party sought discovery in *McCutcheon*, plaintiffs ignore the procedural posture of that case, which was before the Supreme Court after the Commission prevailed on its motion to dismiss in the district court. *McCutcheon v. FEC*, 893 F. Supp. 2d 133, 142 (D.D.C. 2012), *rev'd*, 134 S. Ct. 1434 (2014). The Commission had chosen to move to dismiss rather than file an answer and pursue discovery based on its view (shared by the lower court) that the law in question was settled in the Commission's favor. Neither the district court nor the Supreme Court suggested that discovery was foreclosed or would have been limited had the Commission pursued it. The Court declined to "remand for development of an evidentiary record" despite the case arriving as an appeal of a Rule 12(b)(6) decision under apparently controlling Supreme Court authority, concluding that "[w]e take the case as it comes to us." *McCutcheon*, 134 S. Ct. at 1447 n.4. That statement indicates the Commission could have assembled a new record rather than file a motion to

---

[3] Plaintiffs also describe discovery in an enforcement action, *FEC v. Christian Coalition,* (Pls.' Opp'n at 23 n.14), but the volume of discovery in that case was significantly increased after the defendant failed to produce timely information, at times not until after relevant witnesses had already been deposed, necessitating numerous additional depositions. "The Coalition's repeated inability to comply with reasonable discovery requests led Magistrate Judge Alan Kay, who oversaw discovery, to impose sanctions." *Christian Coalition*, 52 F. Supp. 2d 45, 51 (D.D.C. 1999).

dismiss, and the effect of that new judicial approach is to increase the incentive for parties litigating settled questions of law to submit evidence and wait to file dispositive motions until summary-judgment briefing following the close of discovery, as the Commission intends to do in this case. *Compare Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664-68 (1994) (remanding a First Amendment case for development of a more thorough factual record).

Plaintiffs suggest that the *McConnell* record is available and that other discovery would, therefore, be unnecessary or cumulative. (Pls. Opp'n at 8.) The Commission agrees with plaintiffs that the *McConnell* record is relevant and useful in this case, but it does not directly address activity RNC wishes to engage in — soliciting and spending unlimited contributions for express advocacy — and is more than ten years old. Accordingly, the Commission is entitled to discovery regarding the specific claims plaintiffs present here and information that may have become available after the close of discovery in *McConnell*. There is no reason to depart from the norm where "[s]ummary judgment ordinarily is proper only after the [nonmoving party] has been given adequate time for discovery." *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1032 (D.C. Cir. 2003).

## III.   CONCLUSION

For the foregoing reasons, the Court should grant the Commission's Rule 56(d) motion and deny plaintiffs' motion for summary judgment to allow the FEC time to take discovery.

    Respectfully submitted,

    Lisa J. Stevenson (D.C. Bar No. 457628)
    Deputy General Counsel — Law

    Kevin Deeley
    Acting Associate General Counsel

                                        Harry J. Summers  
                                        Assistant General Counsel

                                        /s/ Greg J. Mueller  
                                        Greg J. Mueller (D.C. Bar No. 462840)  
                                        Seth Nesin  
                                        Charles Kitcher (D.C. Bar No. 986226)  
                                        Attorneys

                                        COUNSEL FOR DEFENDANT  
                                        FEDERAL ELECTION COMMISSION  
                                        999 E Street NW  
                                        Washington, DC 20463  
August 18, 2014                    (202) 694-1650