UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRIS RUFER, <u>et al.</u>,**<br><br>   Plaintiffs,<br><br>   v.<br><br>**FEDERAL ELECTION COMMISSION,**<br><br>   Defendant. | Case No.   1:14-cv-00837 (CRC) |
| **REPUBLICAN NATIONAL COMMITTEE, <u>et al.</u>,**<br><br>   Plaintiffs,<br><br>   v.<br><br>**FEDERAL ELECTION COMMISSION,**<br><br>   Defendant. | Case No.   1:14-cv-00853 (CRC) |

## MEMORANDUM OPINION

To curb the risk and appearance of corruption, Congress has, for almost 40 years, placed dollar limits on individual contributions to federal candidates and their parties. The Supreme Court has upheld these limits repeatedly. At the same time, recent Supreme Court cases instruct that Congress may not limit contributions to political action committees and other entities that do not coordinate their expenditures with candidates or parties. In the Court's view, non-coordinated expenditures by these groups, even if used to expressly advocate for the election or defeat of a particular candidate, pose too low a corruption risk to justify limiting contributions to the groups consistent with the First Amendment. Drawing on this reasoning, Plaintiffs in these related cases—committees of the Republican and Libertarian parties and a Libertarian contributor—seek to invalidate Congress's longstanding party contribution limits as applied to *their* non-coordinated expenditures. What's good for the PAC geese, they argue, should be good for the party ganders.

The merits of Plaintiffs' challenge will be decided in due course.  For now, the Court must decide how and by whom the case will be adjudicated.  Before the Court are applications by both the Republican and Libertarian Plaintiffs to convene a three-judge district court, the decisions of which could be appealed directly to the Supreme Court, under the judicial review mechanism of the Bipartisan Campaign Reform Act ("BCRA"), Pub. L. No. 107-155, § 403.  As an alternative to convening a three-judge court under BCRA, the Libertarian Plaintiffs request that the Court certify the constitutional questions raised in the case to the D.C. Circuit sitting *en banc* under the judicial review procedures of the Federal Election Campaign Act ("FECA").  See 2 U.S.C. § 437h.

To proceed along either of these special jurisdictional avenues, Plaintiffs must raise substantial, non-frivolous constitutional claims that are not clearly foreclosed by Supreme Court precedent.  The Court finds they have done so.  As between the two routes of judicial review, Plaintiffs' alleged injury—being prohibited from accepting or giving unlimited amounts to fund independent campaign expenditures—can only be redressed by invalidating FECA's longstanding base contribution limits.  Constitutional challenges to FECA provisions "are subject to direct review before an appropriate en banc court of appeals, as provided in 2 U.S.C. § 437h, not in the three-judge District Court convened pursuant to BCRA § 307."  McConnell v. FEC, 540 U.S. 93, 229 (2003), overruled in part by, Citizens United v. FEC, 558 U.S. 310 (2010).   The Court therefore will deny Plaintiffs' applications to appoint a three-judge court and instead certify the constitutional questions in the case to the *en banc* DC Circuit after developing an appropriate factual record.

The Libertarian Plaintiffs also seek a preliminary injunction prohibiting the Federal Election Commission from enforcing the current base party contribution limits as applied to their non-coordinated expenditures.  While the Libertarian Plaintiffs' challenge is sufficiently substantial to require *en banc* certification, it is nonetheless in direct tension with longstanding Supreme Court precedent upholding base contribution limits to political parties.  A finding that the challenge would

likely succeed on its merits would require the Court to overlook this precedent, which it declines to do. The Court will, accordingly, deny the Libertarian Plaintiffs' motion for a preliminary injunction.

**I.      Background**

   A.  Statutory Scheme

In 1976, Congress amended FECA to establish monetary ceilings on contributions to political party committees intended to influence federal elections. Federal Election Campaign Act Amendments of 1976, Pub. L. No. 94-283, § 112, 90 Stat. 487, codified at 2 U.S.C. § 441a. These amendments prohibited contributions to "political committees established and maintained by a national political party . . . which, in the aggregate, exceed $20,000; or . . . to any other political committee . . . which, in the aggregate, exceed $5,000." Id. In ensuing campaign cycles, certain corporations, labor unions, and wealthy individuals sought to bypass these contribution limits by making so-called "soft money" contributions to political parties—contributions ostensibly earmarked for state and local elections or "issue advertising" and thus not subject to the same FECA requirements as contributions explicitly intended to influence federal elections. McConnell, 540 U.S. at 122–26, 132. Congress responded to this circumvention of FECA's contribution limits in 2002 with the enactment of BCRA, a sweeping series of amendments to FECA which, among other things, limited soft money contributions to political parties. Id.

Rather than specifically defining and prohibiting soft money contributions, BCRA imposed a general ban on collecting funds in excess of FECA's base contribution ceilings for certain entities involved in federal elections. BCRA § 101, codified at 2 U.S.C §§ 441i(a), (b)(1), (c), added a new section to FECA (section 323) prohibiting national, state, and local party committees from soliciting, receiving, spending, or disbursing money not raised in compliance with the base contribution limits found at subsections 441a(a)(1)(B) and (D). BCRA also amended the overall

base limits by adding a new subsection of 2 U.S.C. § 441a, limiting individual contributions to state party committees to $10,000, and by increasing FECA's contribution limit for national parties to $25,000 and pegging that limit to inflation. BCRA §§ 102(3), 307(a)(2), codified at 2 U.S.C § 441a(1)(B), (D).

FECA contains a special judicial review mechanism that requires a district court to "certify all questions of constitutionality of the Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc" if the challenge is brought by "the national committee of any political party, or any individual eligible to vote in any election for the office of President[.]" 2 U.S.C. § 437h. Rather than incorporating FECA's preexisting judicial review procedure into BCRA, Congress required that constitutional challenges to any "provision of" or "amendment made by" BCRA be heard by a three-judge district court. See BCRA § 403(a)(3). To expedite Supreme Court review of the constitutionality of the new statute, Congress provided that decisions of the three-judge court may be appealed directly to the Supreme Court. Id.[1]

### B. Plaintiffs

Plaintiffs in the first action before the Court are the Libertarian National Congressional Committee Inc., the Libertarian Party of Indiana, and Chris Rufer, a Libertarian contributor ("Libertarian Plaintiffs"). Plaintiffs in the second action are the Republican National Committee ("RNC") and its chairman, Reince Priebus; the Republican Party of Louisiana and its chairman, Roger Villere, Jr.; and two local Louisiana Republican Executive Committees ("Republican Plaintiffs"). Each set of plaintiffs challenges the constitutionality of BCRA to the extent that it (1) limits national, state, and local political party committees from accepting unlimited contributions into segregated funds to be used for non-coordinated federal campaign expenditures and (2)

---

[1] FECA's jurisdictional review mechanism originally included a right of direct appeal to the Supreme Court as well, but Congress repealed that aspect of the law in 1988. Pub. L. 100–352, § 6, June 27, 1988, 102 Stat 662.

prevents individuals from donating unlimited amounts to those segregated funds. Libertarian Pls.' Verified Compl. ¶ 3; Republican Pls.' Verified Compl. ¶¶ 35–54.[2] Plaintiffs contend that the absence of "prearrangement and coordination" between a candidate and a contributor to a segregated, independent expenditure fund ameliorates any threat of actual or apparent *quid pro quo* corruption, "the only constitutionally permissible grounds on which Congress may seek to limit political contributions." Libertarian Pls.' Verified Compl. ¶¶ 20–22; accord Republican Pls.' Verified Compl. ¶¶ 1–5.

All Plaintiffs request that the Court convene a three-judge court to adjudicate their challenges pursuant to BCRA § 403. Alternatively, the Libertarian Plaintiffs ask the Court to certify relevant constitutional questions to the D.C. Circuit for *en banc* review under 2 U.S.C. § 437h. Libertarian Pls.' Application for Three-Judge Court at 1. The Libertarian Plaintiffs also seek a preliminary injunction barring the FEC from enforcing the challenged provisions, arguing that the ongoing injury caused by prohibiting these large donations requires immediate relief. Libertarian Pls.' Mot. for Prelim. Inj. The Republican Plaintiffs have filed a motion to expedite this action and a motion for summary judgment, and the FEC has moved for discovery. The Court held a hearing on Plaintiffs' three-judge court application and the motion to expedite on July 16, 2014.

    C.  Relevant Caselaw

This case sits at the confluence of two currents of First Amendment jurisprudence concerning federal campaign finance: the constitutional permissibility of limiting contributions to federal candidates and political parties, and the constitutional impermissibility of limiting contributions to independent entities whose campaign expenditures are not coordinated with

---

[2] Plaintiffs specifically challenge 2 U.S.C. § 441a(a)(1)(B), which limits the dollar amount individuals can contribute to national parties, 2 U.S.C. § 441a(a)(1)(D), which limits the dollar amount individuals can contribute to state and local parties, and 2 U.S.C. § 441i(a)–(c), which prohibits national, state, and local parties and their officers and agents from soliciting, receiving, or spending funds raised outside of section 441a's contribution limits.

candidates or parties. Plaintiffs rest their challenge on the latter current; the FEC resists it on the former. A brief summary of relevant precedent on both sides follows.

The Supreme Court's application of the First Amendment to federal campaign contribution limits begins with Buckley v. Valeo, 421 U.S. 1 (1976). Applying intermediate scrutiny, the Court in Buckley upheld the constitutionality of FECA's base contribution limits because "the weighty interests served by restricting the size of financial contributions to political candidates are sufficient to justify the limited effect upon First Amendment freedoms" caused by the limits. Id. at 29. The Court affirmed this conclusion in the wake of BCRA's more stringent party contribution limits in McConnell. Due to the "the close relationship between federal officeholders and the national parties," the McConnell Court held that "large soft-money contributions to national parties are likely to create actual or apparent indebtedness on the part of federal officeholders, regardless of how those funds are ultimately used." 540 U.S. at 155. Since then, despite striking down BCRA's aggregate contribution limits, the Supreme Court has emphasized that the base limits on contributions to political parties and candidates remain permissible under the First Amendment. McCutcheon v. FEC, 134 S. Ct. 1434, 1451 (2014) ("[W]e leave the base limits undisturbed. Those base limits remain the primary means of regulating campaign contributions."); see also RNC v. FEC, 698 F. Supp. 2d 150, 152 (D.D.C. 2010), aff'd, 130 S. Ct. 3544 (2010) ("Congress may impose some limits on contributions to federal candidates and political parties because of the *quid pro quo* corruption or appearance of *quid pro quo* corruption that can be associated with such contributions.").

By contrast, the independent expenditure cases on which Plaintiffs rely establish that "Congress may not limit non-connected entities . . . from spending or raising money to support the election or defeat of candidates." RNC, 698 F. Supp. 2d at 152. The development of this principle begins with Buckley's invalidation of numerous FECA expenditure restrictions. In striking down

those restrictions, the Court reasoned that "[t]he absence of prearrangement and coordination of an expenditure with the candidate or his agent not only undermines the value of the expenditure to the candidate, but also alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate."  424 U.S. at 47.  The Court subsequently held that a political party's independent expenditure arm can spend unlimited funds raised in compliance with applicable base limits.  Colorado Republican Fed. Campaign Comm. v. FEC, 518 U.S. 604, 618 (1996) ("We do not see how a Constitution that grants to individuals, candidates, and ordinary political committees the right to make unlimited independent expenditures could deny the same right to political parties.").  Extending that reasoning a step farther, the D.C. Circuit has held that even a non-profit organization that *does* coordinate with candidates and make direct contributions to their campaigns can also make unlimited express advocacy expenditures, provided such a "hybrid" organization  (1) is not a political party and (2) ensures that the respective funds remain segregated in order "to avoid circumvention of individual contribution limits by its donors."  Emily's List v. FEC, 581 F.3d 1, 12 (D.C. Cir. 2009).  Finally, the Supreme Court concluded in Citizens United v. FEC, 558 U.S. 310 (2010), that "independent expenditures . . . do not give rise to corruption or the appearance of corruption," and thus independent expenditure-only organizations cannot be subject to any contribution limits whatsoever under the First Amendment.  Id. at 357; see also SpeechNow.org v. FEC, 599 F.3d 686, 696 (D.C. Cir. 2010) (*en banc*) (under Citizens United, "the government can have no anti-corruption interest in limiting contributions to independent expenditure-only organizations").

   **II.     Analysis**

      A.   Jurisdiction

As noted above, the Court's role at this stage of the proceedings is to determine how and by whom this case will be adjudicated.  Both sets of Plaintiffs have applied for the appointment of a

7

three-judge district court to adjudicate the constitutionality of the challenged BCRA provisions. See BCRA § 403. Alternatively, the Libertarian Plaintiffs have requested that the Court certify questions regarding the constitutionality of any challenged FECA provisions to the *en banc* DC Circuit under 2 U.S.C. § 437h.

At first glance, BCRA § 403(a) appears straightforward. It states simply, in mandatory language, that a single district court "shall" convene a three-judge court to hear constitutional challenges to BCRA. Looks are deceiving, however, as D.C. Circuit caselaw requires the district court to make a sometimes "vexing initial determination of whether an action is required to be heard and determined by a three-judge court." Feinberg v. Fed. Deposit Ins. Corp., 522 F.2d 1335, 1338 (D.C. Cir. 1975) (discussing the three-judge court provision in 28 U.S.C. § 2282). To qualify for a three-judge court, a case must present a "'substantial claim' and 'justiciable controversy.'" Schonberg v. FEC, 792 F. Supp. 2d 14, 17 (D.D.C. 2011) (quoting Feinberg, 522 F.2d at 1338). Plaintiffs' claims cannot proceed via a three-judge court if they are "'obviously without merit,' or if their 'unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.'" Feinberg, 522 F.2d at 1338 (quoting Ex parte Poresky, 290 U.S. 30, 32 (1993)). The same substantiality threshold applies to certification of constitutional challenges to FECA under section 437h. Wagner v. FEC, 717 F.3d 1007, 1009 (D.C. Cir. 2013) ("the district court must determine whether the constitutional challenges are frivolous or involve settled legal questions" (citations omitted)). Moreover, due to an "overriding policy . . . of minimizing the mandatory docket of [the Supreme] Court in the interests of sound judicial administration," district courts are to narrowly construe statutory provisions providing for three-judge courts. Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 98 (1974). With these standards in mind, the Court turns to Plaintiffs' constitutional challenges.

i. Substantiality

The FEC argues that Plaintiffs' challenge is not sufficiently substantial to meet the threshold requirement for adjudication by a three-judge court, or for *en banc* certification, because their claims are clearly foreclosed by the line of Supreme Court cases upholding the constitutionality of party contribution limits. This argument has some force. As previously noted, the Supreme Court in McConnell upheld the portions of BCRA that cabined contributions to political parties in connection with federal elections, "regardless of how th[e] funds are ultimately used." 540 U.S. at 155 (upholding 2 U.S.C. §§ 441i(a) & (b)). This portion of McConnell was untouched by the Court's later ruling in Citizens United, which overturned the ban on unlimited expenditures by private and public corporate entities. 558 U.S. at 360–61 ("The BCRA record establishes that certain donations to political parties, called 'soft money,' were made to gain access to elected officials . . . . This case, however, is about independent expenditures, not soft money." (internal citations omitted)). After Citizens United, the three-judge district court in RNC relied on McConnell in rejecting an as-applied challenge to BCRA's soft-money ban. RNC, 698 F. Supp. 2d at 158–60. The court noted that "McConnell upheld § 323(a) against a facial challenge based on the same applications of the statute that the RNC [was raising] in its as-applied challenge" and explained that "a plaintiff cannot successfully bring an as-applied challenge to a statutory provision based on the same factual and legal arguments the Supreme Court expressly considered when rejecting a facial challenge to that provision." Id. at 157. Doing so, the court observed, "is not so much an as-applied challenge as it is an argument for overruling a precedent." Id. The Supreme Court affirmed the three-judge court's ruling. RNC v. FEC, 130 S. Ct. 35 (2010). FECA's base contribution limits also remain intact after McCutcheon. While striking down the aggregate limits on donations to federal candidates and campaigns, the McCutcheon court stressed the importance of

the base limits as a "hurdle for a donor who seeks both to channel a large amount of money to a particular candidate and to ensure that he gets the credit for doing so." 134 S. Ct. at 1437–38.

Although Plaintiffs' challenge runs contrary to this unbroken line of precedent, their arguments are not so clearly foreclosed as to be insubstantial for purposes of three-judge court jurisdiction or circuit certification. That is so because the Supreme Court has not "expressly considered," RNC, 698 F. Supp. 2d at 157, the specific factual and legal arguments advanced by Plaintiffs in this as-applied challenge: whether the threat of *quid pro quo* corruption or its appearance inherent in donations to political parties may be sufficiently reduced by segregating contributions to independent expenditure accounts so as to defeat the government's ability to cap such contributions consistent with the First Amendment. Because the Supreme Court has not squarely confronted this issue, the constitutional questions raised by Plaintiffs meet the threshold level of substantiality required for adjudication by a three-judge court or certification to the *en banc* D.C. Circuit.

ii. Standing

Having determined that Plaintiffs' constitutional challenges are substantial, the Court must decide who will resolve them. Plaintiffs wish to accept unlimited contributions to fund so-called independent expenditures that expressly advocate the election or defeat of federal candidates and office holders. They cannot do so under current law, however, because BCRA § 307 limits the amounts that individuals may contribute to party committees. Thus, regardless of what other statutory provisions Plaintiffs challenge, no court can give them what they seek—redress their alleged injury in standing terms—without invalidating BCRA § 307's base contribution limits. The pivotal question, then, is whether a three-judge district convened under BCRA § 403 would have that power. If the answer is "no," then Plaintiffs lack standing to present their challenges to a three-judge court.

The Supreme Court confronted the same question in McConnell. Among the many other challenges to BCRA in McConnell, a group of plaintiffs—the "Paul plaintiffs"—argued that BCRA § 307's contribution limits, in conjunction with a FECA provision exempting media companies from the limits, imposed undue editorial controls in violation of the First Amendment. 540 U.S. at 228. The Court found that the Paul plaintiffs lacked standing. Id. It explained:

> The relief the Paul plaintiffs seek is for this Court to strike down the contribution limits, removing the alleged disparate editorial controls and economic burdens imposed on them. But § 307 merely increased and indexed for inflation certain FECA contribution limits. This Court has no power to adjudicate a challenge to the FECA limits in this litigation because challenges to the constitutionality of FECA provisions are subject to direct review before an appropriate en banc court of appeals, as provided in 2 U.S.C. § 437h, not in the three-judge District Court convened pursuant to BCRA § 403(a). Although the Court has jurisdiction to hear a challenge to § 307, if the Court were to strike down the increases and indexes established by BCRA § 307, it would not remedy the Paul plaintiffs' alleged injury because both the limitations imposed by FECA and the exemption for news media would remain unchanged. A ruling in the Paul plaintiffs' favor, therefore, would not redress their alleged injury, and they accordingly lack standing.

Id. at 229.

Like the Paul plaintiffs in McConnell, Plaintiffs here challenge the constitutionality of the base contribution limits. As in McConnell, this challenge cannot properly be heard by a three-judge district court because the base contribution limits are not new BCRA provisions. McConnell makes clear that the jurisdiction of a three-judge BCRA court—and thus the Supreme Court's jurisdiction to hear direct appeals from a three-judge court—extends only "to the increases and indexes established by BCRA § 307[.]" A three-judge BCRA court "has no power to adjudicate a challenge to the FECA limits" that were targeted by the Paul plaintiffs in McConnell and by Plaintiffs in these cases. 540 U.S. at 229. Only if a suit targets BCRA's *amendments* to the base contribution limits—meaning increasing the base limit to $25,000 and indexing it to inflation—may a three-judge court hear the challenge. This reading of McConnell hews to the language of BCRA § 403 itself, which permits a three-judge court to review constitutional challenges to "any provision of

11

this Act or any amendment made by this Act[.]" By specifying "amendments" as separate from "provisions," BCRA § 403 indicates that only the amendments to FECA provisions—not the FECA provisions themselves—may be heard by a three-judge court. See also Schonberg, 792 F. Supp. 2d at 19–20 (dissolving three-judge court for lack of standing where the plaintiff's injuries could only be redressed by challenging BCRA § 301, which did not materially change the FECA provision it amended).

In sum, the lynchpin of Plaintiffs' challenge is the base limits: they cannot accept unlimited funds for non-coordinated expenditures without a court finding that 2 U.S.C. § 441a(a) is unconstitutional as applied to their contemplated expenditures. Because the FECA base limits pre-date and were not substantially changed by BCRA, Plaintiffs lack standing to challenge them through a three-judge court. Instead, the constitutional questions raised by Plaintiffs' challenges must be certified to the D.C. Circuit sitting *en banc* pursuant to 2 U.S.C. § 437h.

### B. Expedition and Discovery

Before certifying the constitutional questions raised by this case to the D.C. Circuit, the Court must "develop a record for appellate review by making findings of fact." Wagner, 717 F.3d at 1009; accord Speechnow, 599 F.3d at 691. The FEC requests a broad range of discovery from Plaintiffs and third parties regarding, for example, whether "political-party contribution limits continue to deter *quid pro quo* corruption" and its appearance; "whether plaintiffs contend they lack the resources for effective advocacy under the existing contribution limits;" and "the manner in which plaintiffs will raise and spend the unlimited funds they seek." Def.'s Mot. for Discovery at 9.

Faced with analogous certification requests under 2 U.S.C. § 437h, other courts in this district have eschewed making findings on the types of "legislative" facts the FEC seeks to develop through discovery. Rather, these courts have limited their findings to "adjudicative" facts

12

concerning the plaintiffs' particular circumstances and basic background information. See Certification Order, Wagner, No. 11-1841 (JEB), Dkt. 51 at 3 (D.D.C. June 5, 2013) ("the 'facts' needed for appellate review . . . are the adjudicative facts particular to this case, not the legislative facts relevant to the parties' legal positions."); Speechnow.org v. FEC, 08-248, 2009 WL 3101036, at *1 (D.D.C. Sept. 28, 2008) ("the question of whether or not the challenged provisions are necessary to ward off corruption . . . . are not the kind of facts that can be determined in a judicial forum").  The Court will follow these prior examples and deny both the Republican Plaintiffs' motion to expedite and the FEC's motion for discovery.  Not only is this approach consistent with prior decisions in this district, it heeds the statute's command that the district court certify all constitutional questions "immediately."  2 U.S.C. § 437h.  The Court echoes the court's observation in Wagner that its "determination does not prejudice the FEC inasmuch as it may still cite public documents discussing corruption—*e.g.*, legislative history, legal treatises, or media reports—in its appellate briefing."  Certification Order, Wagner, at 4.  The parties shall submit joint proposed findings of fact and constitutional questions, noting any areas of disagreement, in accordance with the above approach on or before September 2, 2014.

### C. Libertarian Plaintiffs' Preliminary Injunction Motion

Granting a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).  To succeed, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Id. at 7.  While Plaintiffs' claims are not so "obviously without merit or clearly foreclosed by prior decisions" that they plainly cannot succeed, Feinberg, 522 F.2d at 1338, 1343, as discussed above, they are in tension with forty years of

Supreme Court jurisprudence upholding contribution limits to political parties.  See generally Buckley, 424 U.S. at 35–36; McConnell, 540 U.S. at 142; see also McCutcheon, 134 S. Ct. at 1451 ("[W]e leave the base limits undisturbed.  Those base limits remain the primary means of regulating campaign contributions").  Concluding that Plaintiffs are "likely to succeed on the merits" would require the Court to ignore this precedent.  The Court does not "possess authority to clarify or refine [these cases] in the fashion advocated by the [Plaintiffs], or to otherwise get ahead of the Supreme Court."  RNC, 698 F. Supp. 2d at 160.   The Supreme Court's invalidation of contribution limits on organizations that do not coordinate their expenditures with candidates or parties does not alter the Court's conclusion.

Furthermore, the balance of equities does not tip in Plaintiffs favor, nor would an injunction be in the public interest.  Granting preliminary relief would upset the entire federal campaign finance framework only months prior to the next federal election based on an as yet untested legal theory.  Permitting that to happen would be imprudent, to say the least, and certainly not in the public interest.  The Supreme Court has made clear that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981).  Granting preliminary relief in this case would do precisely the opposite.  Similarly, Plaintiffs will not "suffer irreparable harm in the absence of preliminary relief;" they will simply be required to adhere to the regulatory regime that has governed campaign finance for decades.  The D.C. Circuit "has set a high standard for irreparable injury," underscoring that "the injury must be both certain and great."  Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (citation and quotation marks omitted).  The alleged harm to Plaintiffs caused by delaying receipt of unlimited contributions does not overcome the weighty considerations against preliminary relief outlined above.  As a result, the Court will deny the Libertarian Plaintiffs' motion for a preliminary injunction.

### III. Conclusion

For the reasons stated above, the Court will deny the Republican Plaintiffs' motions to appoint a three-judge court, grant in part and deny in part the Libertarian Plaintiffs' motion to appoint a three-judge court, deny the Libertarian Plaintiffs' motion for a preliminary injunction, deny the Republican Plaintiffs' motion to expedite, deny without prejudice the Republican Plaintiffs' motion for summary judgment, and deny the FEC's motion for discovery. The Court will issue an order consistent with this opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:      August 19, 2014